[Crim. No. 963.  Department Two.—February 7, 1903.]

THE PEOPLE, Respondent, v. ROBERT L. McFARLANE, Appellant.

CRIMINAL LAW—MURDER—CONVICTION FOR MANSLAUGHTER—NEW TRIAL —FORMER ACQUITTAL—PLEADING—EVIDENCE OF MURDER.—Though a judgment of conviction for manslaughter upon an information for murder operates as an acquittal of the murder, yet where such judgment is reversed upon appeal, and a new trial is ordered, the defendant must plead the former acquittal; and whether the prosecution then proceeds for manslaughter under the original information, without objection of the defendant, or should proceed under a new information for manslaughter, evidence of murder is admissible to sustain a conviction for manslaughter, which is necessarily included in the crime of murder.

ID.—INSTRUCTIONS—REFUSAL OF REQUEST.—It was proper for the court upon a new trial had, without the defendant's objection, under the

original information, to refuse a requested instruction that if the evidence established willful murder they should find for the defendant, there being room in the evidence to sustain a conviction for manslaughter; and the defendant was not prejudiced by instructions that the jury could only find the defendant guilty of manslaughter, and that if they believed the defendant guilty of murder in the first degree, or murder in the second degree, or manslaughter, then their verdict should be for manslaughter.

Id.— Evidence—Hearsay—Recollection of Witness—Motion to Strike Out.—A motion to strike out all of the testimony of a witness as hearsay was properly denied, where the witness testified to certain facts from his own recollection.

Id.—Former Testimony—Absence of Witness—Lack of Diligence.— It cannot be said that the court erred in rejecting the testimony of a former witness, where sufficient diligence was not shown to ascertain his whereabouts, and to serve him with a subpœna.

Id.—New Trial—Incompetency of Juror.—It was too late, after the trial, to object to the incompetency of a juror; and it cannot be made ground for a new trial that he was a non-resident of the county at the time of the trial.

APPEAL from a judgment of the Superior Court of Merced County and from an order denying a new trial. M. T. Dooling, Judge presiding.

The facts are stated in the opinion.

Frank H. Farrar, and Miles Wallace, for Appellant.

U. S. Webb, Attorney-General, and A. A. Moore, Jr., Deputy Attorney-General, for Respondent.

CHIPMAN, C.—Defendant was accused by information charging him with the crime of murder. His trial resulted in a verdict of manslaughter. At a previous trial, upon the same information, the same verdict was rendered. From that judgment there was an appeal by defendant to this court, and the cause was remanded for a new trial. (*People* v. *McFarlane*, 134 Cal. 618.) Defendant again appeals from the judgment and from the order denying his motion for a new trial. The transcript does not give the defendant's pleas, but it seems to be conceded that he pleaded not guilty, and also that by the verdict rendered in a former trial—to wit, March 24, 1901— he was acquitted of the offense of murder, and also that he has once been in jeopardy.

1. The court refused an instruction asked by defendant,—
that if "you should believe from the evidence that the defend-
ant killed the deceased, James Tucker, with malice, delibera-
tion, or premeditation, and not in a sudden quarrel or heat of
passion, you should find the defendant not guilty. In other
words, you cannot find the defendant guilty of manslaughter
if you believe from the evidence that he killed the deceased,
James Tucker, by means, solely and alone, of poison, or lying
in wait, torture, or by any other kind of willful, deliberate,
or premeditated killing, for the defendant is not now on his
trial for any other offense than manslaughter, and therefore
cannot be convicted because he may have been guilty of some
other offense."

In addition to correctly instructing the jury as to what
constitutes murder in the first and second degree, and also as
to what constitutes manslaughter, the court charged the jury
as follows: "That, by reason of previous trials of this cause,
the defendant cannot now be convicted, in any event, of any
higher crime than the crime of manslaughter." And again:
"Upon the information in this case, the defendant may, if the
evidence warrant it, be convicted of manslaughter." (Fol-
lowed by a correct definition of manslaughter.) And again
the jury were told: "If you believe from the evidence to a
moral certainty and beyond a reasonable doubt that the de-
fendant is guilty of murder in the first degree, or murder in
the second degree, or manslaughter, then your verdict should
be, 'We, the jury, find the defendant guilty of man-
slaughter.' " Defendant claims that murder and man-
slaughter are as separate and distinct offenses as burglary and
larceny, and that "for the court to instruct them [the jury]
that if the evidence showed the defendant guilty of murder,
it was their duty to find him guilty of manslaughter, was just
as much error as if the defendant had been on trial for grand
larcency, and the court had instructed that a verdict of bur-
glary might be rendered if the evidence warranted."

Defendant's contention is: 1. That the trial could only be
for manslaughter, and that the former conviction of man-
slaughter made it necessary for the people to present a new
information charging that offense; 2. That it was error to
instruct as to murder; and 3. If the evidence showed that

defendant committed murder, he could not be convicted of manslaughter.

The illustration given by defendant is not apposite. One charged with murder may be convicted of manslaughter, for the reason that the law declares that the jury may find the defendant guilty of any offense· the commission of which is necessarily included in that which is charged. (Pen. Code, sec. 1159; *People* v. *Muhlner,* 115 Cal. 304.) Burglary is not necessarily included in the offense of larceny, for there may be burglary without larceny (Pen. Code, sec. 459) or the possibility of committing larceny, as where a house has been burglariously entered (i. e. with intent to commit larceny) and it should turn out, contrary to the calculations of the burglar, that the building is empty. (*People* v. *Shaber,* 32 Cal. 36.) See, also, *People* v. *Garnett,* 29 Cal. 622, where it is said that a larceny, though committed at the same time, is not necessarily included in a burglary, as manslaughter is in murder. When the defendant was granted a new trial he still stood charged with murder, and he could avail himself of the former acquittal of that crime only by plea and proof supporting it. (*People* v. *Bennett,* 114 Cal. 56.) The plea and proof were, that he had been convicted of the offense of manslaughter, by virtue of which the law acquitted him of the higher offense, but this by no means acquitted him of the offense of which he had been found guilty. If a new information had been lodged against defendant charging manslaughter, there would have been no occasion for a plea of former conviction or jeopardy, for he would have been in no peril to which he was not rightly subjected.

This court has held where on an indictment for murder the jury found a verdict of manslaughter, and the verdict was set aside on motion of defendant, that upon a second trial for murder, upon the same or different indictment, he may be again tried and convicted for manslaughter (*People* v. *Gilmore,* 4 Cal. 376 [1]) ; and we think the rule is not changed by the Penal Code. Section 687 of the Penal Code provides that "no person can be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted or acquitted."

Section 1023 of the Penal Code provides: "When the de-

[1] 60 Am. Dec. 620.

fendant is . . . acquitted, or has been once placed in jeopardy
upon an indictment or information, the . . . acquittal or
jeopardy is a bar, . . . for an offense necessarily included
therein, of which he might have been convicted under that
indictment or information.'' And section 1180 of the Penal
Code provides: ''The granting of a new trial places the parties
in the same position as if no trial had been had. All the
testimony must be produced anew, and- the former verdict
cannot be used or referred to either in evidence or in argu-
ment, or be pleaded in bar of any conviction which might
have been had under the indictment.'' The latter part of
section 1180 has been held unconstitutional if made to apply
to an offense of which the defendant has been acquitted by
virtue of a conviction of another offense of less degree in-
cluded in the information (*People* v. *Gordon,* 99 Cal. 227);
i. e. he may still plead jeopardy and the bar to the offense of
which he has been acquitted, but aside from tms the section
would seem to countenance a trial of the lesser crime upon
the same information. If the prosecution in the present case
can be said to have been with a view to convict for murder, it
must be held to have been in direct violation of section 687.
But at the commencement of the trial the defendant made his
plea of former conviction and jeopardy, and was told that
proof was unnecessary, in view of the admitted fact that he
had been convicted of manslaughter, and the court informed
counsel that it would in its instructions properly direct the
jury to protect the defendant against any verdict for murder.
The trial proceeded without objection to the information, on
the assumption that there could be no conviction for any
higher offense than manslaughter, and under such circum-
stances the defendant could not have been prejudiced by
reason of the fact that the trial was on the original informa-
tion rather than on a new one charging manslaughter. The
crime of manslaughter being necessarily included in that of
murder, the information was sufficient, since in alleging the
major it necessarily alleged the minor offense. It was per-
haps unnecessary to instruct the jury fully as to what consti-
tutes the crime of murder, as the defendant was not being
prosecuted for, and could not be convicted of, that crime
after making his plea, which was practically confessed. It
would probably have been sufficient to instruct the jury as to

what constituted the crime of manslaughter. But inasmuch as the offense of manslaughter is necessarily involved in the offense of murder, we cannot see that the defendant was prejudiced by instructions defining the latter crime and in telling the jury that if the evidence warranted a conviction of murder they should find the defendant guilty of manslaughter, and could not, in view of the plea of former conviction, find him guilty of murder. The facts on which the information charging murder was based did not change when, by reason of the former conviction for the lesser offense, the defendant was acquitted of the greater. At the second trial the same evidence would go to the jury, whether it pointed to murder or only to manslaughter (Pen. Code, sec. 1180), and this same evidence would have gone to the jury had the information charged manslaughter instead of murder. In effect, the instruction was, that although the jury might regard the evidence as establishing the crime of murder as defined by the court, the jury must render a verdict of guilty of manslaughter only. Clearly, if murder was made out, so, necessarily, also was manslaughter. Furthermore, defendant was contending, as his refused instruction indicates, that if the evidence showed that he had committed murder, he must be acquitted altogether, and this would seem to have warranted the court in defining the offense of murder and in showing its relation to the offense for which the defendant was on trial, and to refute the claim of defendant that he should escape if murder was established.

The last point urged assumes an anomalous condition of the law, to which we cannot consent. It is, that if a jury has found a defendant guilty of manslaughter on the first trial, where the charge is and the evidence shows murder, he cannot, on a second trial, granted on his own motion for some error occurring at the trial, be again convicted of manslaughter, but must be acquitted. In the present case we do not think the evidence presents the case where, as is claimed, the verdict must have been for murder or acquittal as a justifiable homicide. The circumstances as narrated show a conflict as to who was the aggressor; there are divergent facts testified as to whether deceased or defendant fired the first shot, and as to whether the intention on defendant's part to kill was formed before the fatal meeting or in the heat of the

encounter and under an impression that his life was in danger. Whether a homicide amounts to murder or to manslaughter merely, depends upon the presence or absence of the intent to kill. In either case there may be a present intention to kill at the moment of the commission of the act (*People v. Freel*, 48 Cal. 436), but not necessarily malice aforethought or deliberate premeditation. But conceding that the evidence showed that defendant was guilty of murder, and would so show at the second trial, it would still be true that manslaughter is necessarily included in the supposed murder, and it is immaterial how the murder is perpetrated.

2. One Pennycook was a witness for plaintiff. The defendant moved "to strike out the entire testimony of this witness as hearsay and not to be relied on at all. The witness has testified that he has no recollection of any of the facts to which he has testified, . . . and that he testified entirely from having a portion of his testimony read to him by Mr. McSwain [district attorney] and his memory of what was read to him." Whereupon the court asked the witness the following questions: "Do you say that when you testified before that the events to which you testified and which have been called to your attention were fresh in your memory when you testified to them?—A. Yes, sir.—Q. You now testify to the same facts from the record that has been called to your attention?—A. Yes, sir." The record spoken of was a duly verified transcript of the testimony of the witness given on a former trial of this same cause, written out in longhand from the notes of the official reporter, and duly certified by him as being a correct transcript of such testimony. The court denied the motion, and defendant excepted. The witness was cross-examined at great length, in the course of which counsel apparently read to him most, if not all, his former testimony. The witness, in reply to questions of counsel, would almost invariably say that if the record represented him as testifying as appeared, the testimony was true; that his memory was better then, and that he tried to tell the truth, and did tell the truth, as far as he knew, in his former testimony. The witness would, in most instances, further state that the reading did not refresh his recollection so that he could say he had any present recollection of the facts to which he had formerly testified. The witness did, however, in several par-

ticulars, state facts from his present recollection, and I do not think it can be truthfully said that he testified to no material fact upon his then present recollection, or that the reading of his former testimony did not refresh his recollection of any single material fact. It is true, however, that nearly all his testimony was of the character described by defendant in his objection. The purpose of reading from a memorandum made by the witness, or under his direction, is to refresh his recollection so as to enable him to testify from his refreshed memory, and not to get before the jury the written memorandum. The rule is found in section 2047 of the Code of Civil Procedure, part of which is as follows: "So, also, a witness may testify from such a writing [i. e. "anything written by himself or under his direction, at the time when the fact occurred or immediately thereafter, or at any other time when the fact was fresh in his memory and he knew that the same was correctly stated in the writing"], though he retain no recollection of the particular facts, but such evidence must be received with caution." It was conceded at the trial that the transcript from which counsel read was a correct transcript of the witness's former testimony, and this court has held "that such a transcript may at least be regarded as a private memorandum." (*People* v. *Durrant,* 116 Cal. 179, at p. 213, citing *Reid* v. *Reid,* 73 Cal. 206.) The court did not err in its ruling.

3. One Adrian was a witness for defendant, and testified at the former trial to matters material to the defense. Counsel for defendant offered his former testimony, claiming that due diligence had been used to find him, without success. The trial was set for March 31, 1902. Mr. Farrar, one of defendant's attorneys, testified that he caused a subpœna to issue for Adrian on March 5th, which he sent to the sheriff of the city and county of San Francisco with a letter informing him that Adrian's address could be found by inquiring at the Florence lodging-house. This subpœna was returned with indorsement that the sheriff was unable to find Adrian. Mr. Farrar also testified that on the 18th of March he sent another subpœna to Ed Gibson, of the San Francisco police force, suggesting that if he would go to a certain saloon on Market Street or the Florence lodging-house he could learn where the witness could be found. The letter and subpœna were handed

by Gibson to one Chandes, who, on March 20th, wrote Mr.
Farrar, informing him that after much trouble and search he
found that Adrian had left for the town of Mariposa the day
before, and stating: "If you will forward to that place, you
will be sure to get service on him." Mr. Farrar then testified
that he had "made inquiries of parties who ought to know
and who were in Mariposa about that time, and they told me
that Mr. Adrian had not been in Mariposa." On cross-exam-
ination he testified that his son was in Mariposa a day or two
after the 21st, and he told him to inquire if Adrian was there,
and that when he came back he reported that Adrian had not
been there. Witness also testified that he did not send a
subpœna to Mariposa, because he thought it useless. Mr.
Frost, one of defendant's attorneys, had occasion to visit San
Francisco, and Mr. Farrar gave him a subpœna for Adrian,
with request to find him. Mr. Frost made some effort by
visiting two saloons, known to have been previously fre-
quented by Adrian. At one of them he was told that Adrian
was working in a barber-shop on one of two streets which
were named. He was also told that there was a man working
at night in one of the saloons who could tell him exactly
where to find Adrian, but witness Frost did not see this man,
although he made two or three trips to the saloon to find him.
Whether he searched for the barber-shop does not appear.
This was two or three days immediately before the day set for
the trial. In ruling against defendant the court said: "Three
or four days before the trial began one of the counsel for
defendant was informed that a certain person in San Fran-
cisco could tell him exactly where this Adrian was located,
and after one or two or three vain efforts to see the person
he seems to have given up the search. I think it was the duty
of the counsel at that time, if they desired the attendance of
this witness, to either give a subpœna again into the hands of
the sheriff of that county, with instructions to hunt this man
up who knew where George Adrian was, or to search those
streets, instead of abandoning the attempt." We cannot say
that the court erred in sustaining the objection.

4. On hearing of defendant's motion for a new trial he
offered to prove that one of the jurors who tried defendant
was, at the time of the trial, a resident of the county adjoin-
ing the one in which he was tried. The court refused the evi-

dence, and defendant excepted. The objection to the juror went to his competency, and had it been timely made, full opportunity for which was given defendant before the jury was sworn, should have been sustained. It was too late to raise the objection after the trial. So held where the question of competency related to the fact that the juror was not on the assessment-roll, and also where it appeared that the juror was an alien. (See *People* v. *Mortier,* 58 Cal. 262, and cases there cited.)

In *People* v. *Evans,* 124 Cal. 206, the juror was not a citizen of the United States, and it was held that the objection came too late after verdict. These cases are decisive of the question against defendant.

The judgment and order should be affirmed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Henshaw, J., Lorigan, J.

The following opinion was rendered by the court upon its order denying a rehearing in Bank, March 10, 1903:—

THE COURT.—A rehearing is denied, but in denying such rehearing the court places the denial, so far as the ruling of the trial court upon the motion to strike out the testimony of the witness Pennycook is concerned, solely upon the ground that the record shows that said witness did testify to certain facts from his own recollection, and the motion to strike out, being addressed to *all* of the testimony, was properly denied.

McFarland, J., Angellotti, J., Beatty, C. J., Lorigan, J., Van Dyke, J., Shaw, J.