[Crim. No. 31. Third Appellate District.—January 25, 1907.]

## THE PEOPLE, Respondent, v. HULBERT R. WRIGHT, Appellant.

CRIMINAL LAW—MANSLAUGHTER—CLAIM OF SELF-DEFENSE—SUPPORT OF VERDICT.—Upon a conviction of manslaughter, where there was some evidence from which the jury might have drawn the inference that the defendant was not in danger of life or bodily injury when he fired the fatal shot, though there was other evidence from which the jury might have inferred that the claim of self-defense was supported, and which would have justified them in so finding, the question was one for the jury to determine, and with their conclusion this court cannot interfere.

ID.—EVIDENCE—DEFENDANT'S REPUTATION—SUPPORT OF PRESUMPTION—LIMITING NUMBER OF WITNESSES.—Where the district attorney agreed to call no witnesses to assail defendant's reputation for peace and quiet; and the defendant offered witnesses in support of the presumption in his favor in that respect, it was not error for the court to limit the number of such witnesses to eight.

ID.—CROSS-EXAMINATION—TESTING KNOWLEDGE—PRESUMPTION UNASSAILED.—The district attorney had the right to cross-examine the witnesses for defendant to test their knowledge of his reputation; and such cross-examination is in no sense an attack upon his reputation. If, thereupon, it appeared that one or more of such witnesses knew nothing about the matter, defendant cannot complain; and the presumption still remained in his favor unassailed.

ID.—ACQUITTAL OF MURDER BY VERDICT FOR MANSLAUGHTER—SECOND TRIAL—INSTRUCTION AS TO MURDER NOT PREJUDICIAL.—Where, upon a former trial, there had been an acquittal of murder, by a verdict

for manslaughter, and upon the second trial the jury were instructed that if they believed, beyond a reasonable doubt, that the defendant is guilty of murder in the first or second degrees or of manslaughter, they must find the defendant guilty of manslaughter, an instruction as to what constituted murder in the first degree is not prejudicial where there was nothing misleading in the instructions taken as a whole.

ID.—THREATS—IMPEACHMENT OF WITNESS—INCONSISTENT STATEMENTS —IMPROPER REBUTTAL—PRIOR CONSISTENT STATEMENT.—Where a witness for the defendant had testified to threats made by the deceased, and was impeached by proof of his bad reputation for honesty and integrity and also of inconsistent statements made by the witness, the defendant was not entitled to prove in rebuttal a prior consistent statement made by the witness that he had seen the deceased waiting with a rifle about two hundred yards from his house.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—FACTS SHOWN BY RECORD— IMPROPRIETY NOT GROUND FOR REVERSAL.—*Held,* that the district attorney in this case was guilty of improper conduct in bolstering up the denial of a witness sought to be impeached, and improperly referring to meretricious relations between the wife of deceased and defendant having an insufficient basis in defendant's evidence; yet that, under the facts shown by the record such misconduct was not ground for reversal of the judgment of conviction.

ID.—CAUTION TO DISTRICT ATTORNEYS.—District attorneys generally are cautioned that reversals are made necessary in too many cases because of a desire on their part for present victory, regardless of consequences to follow on appeal. This officer owes it not only to his own reputation, but to the court and the people whom he represents, to avoid all possible error in the conduct of cases.

ID.—THEORY OF DEFENSE—LOSS OF CAP BY DECEASED—REMOTE EVIDENCE.—Where it was the theory of the defense that deceased, after having fired one shot, had stooped to pick up a cap which dropped off the nipple of the second barrel of his gun, when he received defendant's shot in the back of the neck, an offer by defendant to prove that about one month before the homicide a witness was handling the same gun, and that when he raised the hammer the cap fell off, was inadmissible as being too remote, and casting no light on the kind of caps used by deceased when killed.

APPEAL from a judgment of the Superior Court of Butte County, and from an order denying a new trial. John C. Gray, Judge.

William E. Duncan, Jr., for Appellant.

U. S. Webb, Attorney General, for Respondent.

4 Cal. App.—45

CHIPMAN, P. J.—The defendant was informed against for the crime of murder and was convicted of manslaughter. He appeals from the judgment of conviction and from the order denying his motion for a new trial.

This is the second appeal of the case. Defendant was first convicted of manslaughter, and for errors committed at the trial the judgment was reversed and the case remanded. (*People* v. *Wright*, 144 Cal. 161, [77 Pac. 877].) A statement of the facts will be found in the opinion of Mr. Justice Henshaw in the decision upon the first appeal, to which we refer for convenience. In some particulars the facts are not shown to be the same in the present record as are narrated by Judge Henshaw, and whether so or not are not conclusive in the present appeal. But for the purposes of this opinion it is not necessary to point out wherein the facts before us differ from those thus appearing. The killing of Farley by defendant is not denied. His claim is that he acted in self-defense. To state the evidence in all its phases would require much space and seems to us unnecessary.

1. Upon the sufficiency of the evidence to justify the verdict we need only observe, as it is questioned, that there was some evidence from which the jury might have drawn the inference that the life of defendant was not in actual danger or his body of some great injury, at the time he fired the fatal shot. The circumstance that the shot entered the back of the neck of deceased and emerged at his chin, together with other facts, might have justified the inference that deceased had at that time withdrawn from or ceased the encounter. It is true deceased had a few seconds previously fired at defendant apparently with the purpose of killing him, and defendant might, under the circumstances, have had reason to believe that deceased would continue the assault and that his only safety was to kill or disable deceased before the latter could again fire. There is evidence which would have sustained the jury in so finding. But these were matters for the jury to determine, and with their conclusion this court cannot interfere.

2. The district attorney was asked if he intended to attack the reputation of defendant for peace and quiet, and answered "No." Thereupon the court limited the number of defendant's witnesses to prove his reputation to eight. After these witnesses had been examined in chief, the district at-

torney cross-examined them to test their knowledge of defendant's reputation in the particulars involved. Defendant objected to this and claimed that it was an indirect attack upon defendant's reputation and that he should not be limited to the number stated by the court.

We think it was proper for the district attorney to cross-examine the witnesses on the point, though he had declared that he would not attack defendant's reputation by witnesses. This was in no sense an attack upon defendant's reputation. Defendant was but supporting the presumption that his reputation was good for peace and quiet. In doing so it was proper for the people to test by cross-examination the extent of knowledge on the subject possessed by the witnesses. If upon the cross-examination it appeared that one or more of their witnesses knew nothing of the matter, defendant cannot complain, for it was his duty to know what they would testify to and what knowledge they had. Furthermore, the presumption remained in his favor unassailed. We discover no error in the court's ruling.

3. The court gave the following instruction: "There need be no appreciable time between the attempt to kill and the act of the killing; they may be instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of the will, deliberation and premeditation on the part of the slayer, and if such is the case the killing, if unlawful, is murder in the first degree, no matter how rapidly these acts of the mind may succeed each other or how quickly that they may be followed by the act of killing." It is claimed that this was prejudicial error, citing *People* v. *Maughs,* 149 Cal. 253, [86 Pac. 187].

The jury were instructed that by reason of the result of the previous trial, the defendant could not now be convicted in any event of any higher crime than manslaughter. The court also instructed the jury as follows: "If you believe from the evidence to a moral certainty and beyond a reasonable doubt that the defendant is guilty of murder in the first degree, or murder in the second degree, or manslaughter, then your verdict should be, 'We, the jury, find the defendant guilty of manslaughter.'" No objection was made to these instructions.

A somewhat similar point arose in *People* v. *McFarlane,* 138 Cal. 481, [71 Pac. 568, 72 Pac. 48], and in that case full

instructions were given as to the elements constituting murder. It was contended that it was error to instruct as to murder, for, as was claimed, if the evidence showed that defendant committed murder, he could not be convicted of manslaughter. Among other things the court said: "It was perhaps unnecessary to instruct the jury fully as to what constitutes the crime of murder as the defendant was not being prosecuted for, and could not be convicted of, that crime after making his plea of once in jeopardy for murder." The court added: "But inasmuch as the offense of manslaughter is necessarily involved in the offense of murder, we cannot see that the defendant was prejudiced by instructions defining the latter crime and in telling the jury that if the evidence warranted a conviction of murder they should find the defendant guilty of manslaughter, and could not, in view of the former conviction, find him guilty of murder."

Full and correct instructions were given defining the crime of manslaughter, and this was the only crime for which the defendant was on trial or could have been convicted. If the instruction complained of had been correctly given it would not have been prejudicial to the defendant (*People* v. *McFarlane*, 138 Cal. 481, [71 Pac. 568, 72 Pac. 48]), for he could not have been convicted of murder. Much less would an incorrect instruction have been prejudicial, unless it conflicted with the instruction given as to manslaughter, or was otherwise confusing and misleading, which we do not think was the case in this instance.

4. Witness Johnson had testified to certain threats he had heard deceased made against defendant. Later along the witness Hendricks testified that Johnson's character for honesty and integrity was bad. He also testified that at a certain time stated, Johnson made some statements to him about what occurred when he, Johnson, met deceased, the purpose being to show that the statements differed from those given by Johnson at the trial. No objection was made to this evidence. Still later in the trial, in defendant's rebuttal, witness Evans was asked if he had a conversation with Johnson "shortly before the shooting in which Farley was killed." He answered "Yes." He was then asked if he heard "Johnson say anything as to whether he had seen Farley waiting with a rifle about two hundred yards from his house or something like that." The question was objected to by the

district attorney as irrelevant, immaterial and incompetent, and as not in rebuttal of anything brought out by the district attorney, and as hearsay. The objection was sustained and exception noted. It is claimed that defendant had the right to show prior consistent statements by Johnson and thus rebut to some extent his impeachment by the witness Hendricks, citing *People* v. *Doyell,* 48 Cal. 85. The general rule is that a witness cannot be corroborated by showing previous consistent statements. There are some exceptions, but this is not among them. (*Mason* v. *Vestal,* 88 Cal. 396, 398, [22 Am. St. Rep. 310, 26 Pac. 213], and cases there cited.) In that case the prior consistent statements which were admitted by the lower court went to the question whether the witness was a truthful man, and the court said, "the evidence has no bearing upon the issue."

5. Misconduct of the district attorney is claimed for two causes. Defendant was attempting to impeach the witness Joe Farley by showing that he had testified differently at the former trial. A series of questions and answers was read to him, and he was then asked:

"Q. Did you so testify? A. No, sir, I think not.

"Mr. Sexton, District Attorney: I will swear that he didn't, too."

Exception was taken to this remark. No motion was made to strike it out and the court apparently took no notice of it. The particular fact as to which it was sought to show that the witness had contradicted himself was cleared up beyond dispute, namely, that deceased passed out of the bedroom with his gun through a window, and not through the door leading into the bedroom. When he denied having given the testimony as read to him from the purported record of the former trial it was improper for the district attorney to bolster up his denial, but we are satisfied that no prejudice resulted to defendant.

In his address to the jury the district attorney said: "You gentlemen know the law, and although Mrs. Farley has been divorced from this man and awarded the custody of the children, that if meretricious relations did exist between Mr. Wright and Mrs. Farley—" At this point counsel for defendant interrupted: "We object to that and ask the court to admonish the district attorney to refrain from mentioning any such relations. The only assertion that has been made

is what Mr. Farley stated concerning the breaking up of his family, and the notion he had in his head that Wright was making trouble in his family.

"The Court: The district attorney will refrain from referring to those matters."

Defendant thereupon took exception to the remarks of the district attorney above.

"Mr. Sexton: We claim that what I have referred to and commented upon is the testimony brought out solely and exclusively by the defense in this case, and not by the prosecution."

To these remarks defendant took exception, but did not ask that they be withdrawn or challenge their truth, or request the court to instruct the jury to disregard the remarks.

The judgment was reversed on the first appeal in part because the prosecution was permitted to show that deceased believed that improper relations existed between defendant and Mrs. Farley. In *People* v. *Sheares,* 133 Cal. 154, [65 Pac. 295], the court, speaking of certain remarks made to the jury by the district attorney to which exception was taken, said: "This was improper, but its effect would have been removed if the defendant had asked the court to instruct the jury that it was improper, and to disregard it."

There are instances where the mischief done by the improper conduct of the district attorney cannot be thus cured, as where he refers to the fact that the defendant failed to appear as a witness in his own behalf. But we do not think that the conduct of the district attorney in the present instance could be classed as incurable error. In view of the ruling of the supreme court in the former appeal, the district attorney should have refrained from making any reference to the matter. It was, however, not such error as would justify the reversal of the case upon the record before us. It may be remarked by way of caution to district attorneys generally that reversals are made necessary in too many cases because of a desire on their part for present victory regardless of the consequences to follow on appeal. This officer owes it not only to his own reputation, but to the court and the people whom he represents, to avoid all possible errors in the conduct of cases.

6. Defendant advanced the theory at the trial that deceased, when he was shot, had stooped to pick up the cap which it is

claimed had dropped off the nipple of the second barrel of his gun, and that this accounts for his having received the shot in the back of his neck. Defendant offered to prove by a witness that about one month before the homicide he, the witness, was handling this gun, raised the hammer and the cap fell off. The court rightly sustained the objection made to the testimony. Obviously it was too remote and would cast no light upon the kind of caps used by deceased on the day of the killing.

There are no other alleged errors in the record which call for notice.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.