R. Muñiz de León, Plaintiff and Appellant, *v.* Ventura Cortés, Defendant and Appellee.

No. 3813. Argued March 9, 1926.—Decided January 25, 1927.

162

*Juan B. Soto* for the appellant.   *Félix Santoni* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

Rafael San Millán, who had been a witness in the previous trial of this case, when presented as a witness did not recall the facts, or rather conversations, to which he had previously testified. He was allowed to refresh his memory by reading the stenographer's report of the former trial. Thereafter, on examination, he said: "Now, after I have read the stenographer's report that has been shown me, I recall," and proceeded to tell of a supposed admission of the complainant. On cross-examination the witness said that from his reading he deduced what he had testified to before. He was asked in effect whether he now had a memory of what had happened, or because he had read the record. He answered ambiguously. Examined by the court, he said again that he deduced what he said from what he had read. He repeatedly said that he deduced the truth from what he had read; that if he had not read the record it would have been difficult for him to tell what had happened. "What do you mean by deduce?" he was asked. "To reach the conclusion at which we have arrived," he said. "I deduce after reading that (the stenographic record) that was what happened (*después de leer eso que lo ocurrido allí fué eso*)." Appellee points out that the witness also said: "Undoubtedly

a declaration that I made at that time had my mind fresh in regard to the events that took place, was the truth." The complainant and appellant then moved that the testimony of the witness be stricken and the court overruled the motion, to which the defendant excepted and assigns error.

*Putnam* v. *United States,* 162 U. S. 686, is the principal reliance of appellant. After refreshing the memory of a witness it must have been his memory that spoke the court decided, and also that the memorandum produced should have been practically contemporaneous with the facts, four months being too long a time. In the case at bar the stenographic record was made a much longer time than four months after the facts or conversations of which the witness gave evidence. If the case is applicable there is no doubt that both points are well taken.

The appellee, to answer the assignment of error, cites section 154 of the Law of Evidence, as follows:

"A witness is allowed to refresh his memory respecting a fact, by anything written by himself, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing. But in such case the writing must be produced, and may be seen by the adverse party, who may, if he choose, cross-examine the witness upon it, and may read it to the court or jury. So, also a witness may testify from such a writing, though he retain no recollection of the particular facts, but such evidence must be received with caution."

Except that the words only refer to a memorandum made. by a witness or under his direction and not textually to previous testimony, our written law is a direct answer to the contentions of the appellant. California, and Porto Rico following that state, have changed the rule of the common law involved in the citation from the Supreme Court of the United States. California, nevertheless, has decided that stenographic notes of a previous trial should be considered to be taken under the direction of the witness, *People* v.

*McFarlane,* 138 Cal. 481, 488; *People* v. *Durrant,* 116 Cal. 179, 213. As our Law of Evidence was taken from California and the interpretation given by the courts meets with our approval, we shall follow that state.

The appellant, a little late it appears to us, also questions whether the testimony at a previous trial may be used to refresh the recollection of a witness. At the trial it does not appear that the motion to strike was based on this ground. The objection, if valid could have been made opportunely when the supposed memorandum was first presented, and hence a waiver arose.

The third assignment relates to the refusal of the court to admit certain alleged "self-serving testimony." The theory of the complainant was that the defendant had agreed to buy the contents of a shop to be turned over to Suárez. In other words, that defendant was buying for the benefit of another. The defendant's theory was that he had merely agreed to become responsible for $3,000 if the mother-in-law of Suárez became responsible for a similar amount, and that when she refused he likewise retired his offer. Suárez, as a witness for complainant, had testified that Cortés, the defendant, had told Muñiz that he retired his offer. Then when the witness was about to testify what Muñiz had said in reply, the defendant successfully objected.

The appellee draws our attention to the case of *Hausman* v. *Hausling,* 78 Cal. 283, 286, where it was held that a litigant was not permitted to strengthen his case by his own declarations, whether written or verbal. The current cases where declarations of this kind are excluded generally arise in the absence of one of the parties. The theory was that Muñiz by his silence had seemed to consent to the statements of Cortés retiring his offer, but under the facts before us we can not see that such silence would have meant anything like an abandonment by Muñiz of his claim that Cortés had agreed to buy for Suárez. The defense, besides, was not

that Cortés had retired his offer to buy, but that he had never made such an offer. The report of anything that Muñiz might have said did not tend either to prove the claim of Muñiz or disprove the defense of Cortés, and the declaration would seem to fall within the rule laid down by the California case. However, if we had greater doubts and we were shown cases in which such testimony was admissible we should still feel bound to sustain the action of the court. The complainant should then have told the court what he intended to prove by the witness, so that there might be a chance to judge the admissibility of the proposed testimony. Exception was taken without putting the court in a proper position. We find neither error nor prejudice. In pursuance of the theory of a lack of prejudice the witness was subsequently allowed to say that Muñiz protested on the ground that he had already turned over the establishment to the witness. So that neither in the record nor the brief of the appellant is there any indication or theory of how the complainant was prejudiced.

The second and fourth assignments may be treated together. They relate to the evidence and the weighing thereof. This is one of the numerous cases where if the finding had been for the complainant perhaps we should have found no error. Something of this we indicated in our former hearing of this same case. There was strong evidence tending to show that Cortés agreed to buy the establishment for Suárez and that Muñiz delivered the establishment to Suárez on the strength of the promises made by Cortés. There was also evidence tending to show that an inventory of the goods was made and that Cortés was present and knew all about the making of the inventory. And there were at least three witnesses, including two of the principal actors, who testified that Cortés agreed to buy the goods from Muñiz for the benefit of Suárez and that Muñiz let Suárez have the goods on the strength of the promise of Cortés. On the other hand,

Cortés denied all of these statements and his testimony, supported by other witnesses, was believed by the court. The court found that the present position of complainant was totally inconsistent with the position taken by him when he filed his original complaint; that he was thoroughly advised of the nature of the said original complaint, namely, that Cortés agreed to become a surety for Suárez. This state of facts was brought out by the statements of San Millán, marshal of the court, and by Miranda, the original attorney in the case. Generally and from their testimony especially the court found that Cortés had never agreed to buy the goods for Suárez. The court also suggests that it was probably section 440 of the Commercial Code that caused the complainant to change his position, inasmuch as that section requires the contract of suretyship to be in writing.

During the evidence, especially when Suárez was on the stand, questions were asked as to what benefit Cortés would derive from the sale to Suárez. Evidently none. Of course, if Muñiz was led into delivering to Suárez on the promise of Cortés, the lack of benefit to the latter would make little difference. However, his lack of benefit was a matter also to be weighed by the court. There is a fair probability that Cortés did take some steps in aid of Suárez whom he had helped before, but in view of the findings of the court we do not find enough in the record to make an independent finding and the judgment should be affirmed.