[Crim. No. 3594. Second Dist., Div. One. June 30, 1942.]

THE PEOPLE, Respondent, v. ROY KING, Appellant.

124

Maurice A. Gleason for Appellant.

Earl Warren, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

WHITE, J.—In an information filed by the district attorney of Los Angeles County, defendant was charged in two counts with violations of section 288 of the Penal Code, while the remaining two counts alleged the commission by him of acts denounced by section 288a of the same code. Following the entry of not guilty pleas as to all counts, trial before a jury resulted in guilty verdicts upon all charges. Upon the hearing of defendant's motion for a new trial, the same was denied as to counts one and three charging violation of section 288 of the Penal Code, while counts two and four, alleging violations of section 288a, were dismissed by the court in the interests of justice. From the judgment of conviction entered as to counts one and three defendant prosecutes this appeal.

It is first contended by appellant that the stories related by the two complaining witnesses, young girls aged eleven and twelve years, respectively, are inherently improbable, and

show ''that it was physically impossible for the defendant to have committed these acts in the manner (they stated) it was accomplished,'' and that therefore a reversal of the judgment is required. This contention is refuted by the record, from which it appears that appellant resided with his family in one of the apartments of a government housing project on Via Wanda Street in North Long Beach. This project consisted of 83 buildings with 11 families living in each building. Appellant's apartment was about 100 feet from the apartment occupied by the families of the two prosecuting witnesses. According to the testimony of the prosecutrix named in count one, she was eleven years of age and had known the appellant for some two years. She testified that about Thanksgiving time in the month of November, 1941, this witness, in company with her playmate (the prosecutrix named in count three), went to appellant's apartment, upon which occasion he was downstairs painting some furniture. He invited the two girls to come in and look at the furniture, then requested them to come upstairs to a back bedroom. Upon arrival at the latter room, appellant showed the two girls a book containing pictures of nude men and women. One of the girls left the room, going downstairs to see her sister, leaving the other in the back bedroom with appellant. The witness who remained in the room testified that after her playmate had departed, appellant pushed her on the bed, removed certain of her clothing, and thereupon perpetrated certain acts detailed by her that without question constituted a violation of section 288, *supra*.

The other prosecutrix testified that following the above occasion, and either in the same or the succeeding month, she went back to appellant's apartment to complain that his young son had destroyed one of her ''play books.'' This she testified was on a Saturday afternoon when her mother and father had gone downtown. Appellant admitted her to his apartment, took her to the back bedroom, and requested her to lie down on the bed, whereupon he perpetrated certain lewd and lascivious acts upon her person. While appellant was engaged in these acts his young son called to him, whereupon appellant told the prosecutrix to get into the closet and told his son to go on with his play, after which he let the complaining witness out of the closet, and she then went home. Neither of the child victims complained or related to their parents or other members of their families any of the

foregoing occurrences, but one of the complaining witnesses testified that they had narrated what had transpired to another of their playmates. A Juvenile Hall physician testified that she examined the complaining witnesses and found that with reference to one of them the hymen had suffered a rupture not of recent origin, and as to the other prosecutrix, the physician discovered a slight rupture on both the right and left sides of the hymen, which also was not recent, and was without irritation.

The father of one of the complaining witnesses testified that on November 22, 1941, which was a Saturday afternoon, he and his wife, together with appellant's wife, drove to Long Beach to pay a tire bill. He fixed the date through a receipt which was marked in evidence and bore that date. He testified that they stayed in Long Beach until three o'clock and that appellant was home on that date. The wife of this witness testified that it was the usual custom of her and her husband to take appellant's wife with them to Long Beach on Saturday afternoons.

The defendant produced witnesses who were living in the apartments of the government housing project where he and the complaining witnesses lived, all of whom testified that they remembered but one occasion, along in the fall of 1941, when appellant was painting furniture, and that on that occasion none of these witnesses saw either prosecutrix go into the apartment occupied by appellant. He also introduced testimony that his general reputation for the traits involved in the offenses charged was good. Appellant's son testified that on an occasion one of the prosecuting witnesses lay down on the bed in a semi-naked condition and asked him to come in, but that he did not go. Appellant's wife testified to an occasion when she was in the apartment of one of the prosecuting witnesses and saw the latter lying on a couch partially undressed and heard her ask the witness' son to come in and play with her. She also testified that on another occasion she came upon this particular prosecuting witness and her boy under a blanket playing on the floor, but stated that she made no mention of either occasion to the mother of the girl. The record seems to indicate that the parents of the complaining witness and the appellant and his wife were very good friends. Defendant testified in his own behalf, denying the commission of any of the offenses charged against him. He testified to an occasion upon which, instead of his exhib-

iting indecent pictures to the prosecuting witnesses, they showed him an indecent photograph.

Concerning appellant's first contention, we are unable to say that the testimony given by these alleged victims of his lust is inherently improbable, wholly untrustworthy and not entitled to belief. As heretofore stated, these children were of the ages of eleven and twelve years. Their competency to testify and their understanding of the meaning, solemnity and obligations of an oath were conceded by appellant's counsel at the trial. There was no claim, nor even an attempted showing, that they were coached as to their testimony, while vigorous and searching cross-examination failed to bring into the record anything upon which could be predicated a conclusion of willful or deliberate falsification by either of the prosecuting witnesses or that their testimony was the mere figment of a childish imagination. The trial judge was at all times mindful of appellant's rights, and by way of a cautionary instruction admonished the jury that "you are instructed that a charge of this nature is particularly difficult for a defendant to clear himself of. No charge can be more easily made, and none more difficult to disprove. From the nature of the case, the complaining witness and the defendant are generally the only witnesses. The law does not require in this character of a case that the prosecution witness be corroborated by another witness, or other corroborating circumstances, but does require that you examine her testimony with caution."

However dubious we might be, from a reading of the cold record of this case, as to the verity of the testimony given by the prosecuting witnesses, unless we can justly conclude that their entire testimony is *per se* unbelievable we are without authority to interfere with the findings of the triers of fact, because, as was said by this court in *People* v. *Quinn,* 12 Cal. App. (2d) 752, 754 [55 P. (2d) 1277]:

"While the alleged variances or inconsistencies apparent in the child's testimony and the contradictions referred to undoubtedly afforded opportunity for a persuasive argument to the jury against the reliability of her testimony, we find nothing in them from which a reviewing court could justly conclude that her entire testimony is *per se* unbelievable, and that it was therefore the jury's duty not only to disregard it, but to accept the defendant's denial of any wrongdoing on his part. Reviewing judges are, obviously, in no position to

determine the credit which should be accorded to witnesses or to weigh their testimony. Undoubtedly for that reason our Constitution provides that the appellate courts are not authorized to review evidence, except where, on its face, it may justly be held that it is insufficient to support the ultimate issue involved, in which case it is not a review of a question of fact, but purely one of law. (*People* v. *Haydon*, 18 Cal. App. 543, 553 [123 Pac. 1102, 1114].) Carrying out the spirit and intent of this constitutional provision, the legislature has ordained that the jury are the exclusive judges of the credibility of witnesses (Code Civ. Proc., § 1847), and are the judges of the effect and value of evidence addressed to them, except in those instances where it is declared by law that it shall be conclusive. (Code Civ. Proc., § 2061.) It necessarily follows from the rules just noted that the jury in this case were authorized, if they conscientiously felt warranted in so doing, after full and fair consideration thereof, to reject any testimony which might have been contradictory to that of the child witness (*People* v. *Phelan*, 123 Cal. 551, 557 [56 Pac. 424]; *People* v. *Wright*, 4 Cal. App. 704, 706 [89 Pac. 364]; *People* v. *Turpin*, 10 Cal. App. 526, 530 [102 Pac. 680]; *Clark* v. *Tulare L. D. Co.*, 14 Cal. App. 414, 432 [112 Pac. 564]), and, therefore, to disbelieve the testimony of the defendant and accept that of the child as to the immediate circumstances of the alleged felonious assault and the actions constituting the same, however weak in places the latter's testimony may have been made to appear, or however sharply her testimony on other important points might have conflicted with the testimony of other witnesses.

"In addition thereto, we must remember that a motion for a new trial was made in this case and denied by the trial court. The judge of that tribunal had the witnesses before him, was fortified with an opportunity to observe their manner and demeanor on the stand and apparent candor or lack of the same, and the reasonableness or unreasonableness of the stories they told; and unless he believed the testimony of the child and disbelieved the evidence given by the defendant, it not only was his privilege but his duty to grant a new trial. In denying the motion for a new trial the lower court concurred in the action of the jury, which rejected defendant's denial and accepted the testimony of the child witness concerning the lewd and lascivious acts claimed by her to have been committed upon her by the defendant."

See, also, *People* v. *Kearney,* 20 Cal. (2d) 435 [126 P. (2d) 612].

Where, as here, the child witnesses were aged eleven and twelve years, concededly possessed of ordinary intelligence, and testified to similar acts on different occasions, the perpetration of which was not inherently improbable, and where there was no indication that the stories had been prompted by others, we are not authorized to reverse a judgment founded thereon. Moreover, there are some corroborating circumstances present. Both the prosecution and defense concede that appellant was at home painting his furniture on a Saturday, as related by the child witnesses, and that this was the only occasion in 1941 when he was so engaged. There is also testimony as to the Saturday when the parents of one of the children took appellant's wife to Long Beach, the date of which is established by a tire bill which was in evidence. Therefore, the most that can be said is that the testimony introduced on behalf of appellant created a conflict with that of the prosecuting witnesses, and that conflict was resolved by the jury against the defendant. In connection with appellant's claim that the description given by one of the complaining witnesses as to what took place was a physical impossibility, thereby rendering her testimony incredible as a matter of law, it must be remembered that the jury and the trial court had the defendant and the witness before them, and any doubt as to whether the acts described were physically impossible was resolved against the defendant by the jury and again by the trial court on the hearing of a motion for a new trial. Under the facts here present we are not empowered to disturb such finding made by the triers of fact. (*People* v. *Stangler,* 18 Cal. (2d) 688, 691 [117 P. (2d) 321].)

█ Appellant earnestly insists that his substantial rights were prejudiced when the trial court, at the conclusion of the presentation of the case by the prosecution, denied his motion to dismiss the two counts charging violations of section 288a of the Penal Code. We are unable to understand how appellant could have been prejudiced by the action of the trial court, since the evidence upon which the motion was based had already been submitted to the jury. That the prosecution is entitled to charge in the same information more than one offense, when such offenses are allegedly connected together in their commission, or where the charges are different state-

ments of the same offense, is established by section 954 of the Penal Code. Furthermore, even though we concede error in the refusal of the court to dismiss counts two and four, or to advise the jury to acquit on those two counts, such error was cured by the subsequent action of the court in dismissing these counts upon the motion for a new trial. (*People* v. *Shekell*, 5 Cal. App. (2d) 537, 538 [43 P. (2d) 328].)

There being no error in the record which would justify a reversal, the judgment is affirmed.

York, P. J., and Doran, J., concurred.