No. 75–6494.  KAREN v. CALIFORNIA.  Ct. App. Cal., 2d App. Dist.  Certiorari denied.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN joins, dissenting.

At the beginning of his trial for manslaughter, petitioner, who acted as his own counsel throughout the trial, asked the judge to provide him with civilian clothes.  He represented that he had been in jail for five years and had no suitable civilian clothing.  Although there is some suggestion that petitioner might have been able to obtain suitable clothes,[1] the trial court did not reject his request for that reason.[2] Rather, it held that petitioner's appearance before the jury in clothes labeled "L. A. CO. JAIL" was "proper."  Petitioner objected.

---

[1] Brief for Respondent 27–28.  Petitioner's mother was in the courtroom and other relatives resided in the community.  Their presence cannot excuse the State from meeting its responsibility to petitioner, who was over 21 and had been a prisoner for five years.  Cf. Administrative Office of the United States Courts, Guidelines for the Administration of the Criminal Justice Act, c. 2, p. 8 (1975) (determination of eligibility for appointed counsel to be made without reference to resources of defendant's family).

[2] The trial court also did not find, as the appellate court suggested, see Brief for Petitioner, Ex. A, pp. 31–32, that petitioner had available civilian clothes which he considered unsuitable.

Only five months ago, this Court unanimously recognized that an accused's appearance before a jury in identifiable jail clothes could deprive him of his fundamental right to a fair trial by undermining the presumption of innocence:

"[T]he constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout the trial that, not unlike placing a jury in the custody of deputy sheriffs who were also witnesses for the prosecution, an unacceptable risk is presented of impermissible factors coming into play." *Estelle* v. *Williams,* 425 U. S. 501, 504–505 (1976).

Under *Estelle,* the trial court's ruling that clean jail clothes are "proper" attire for trial is clearly wrong.

That petitioner asked that the State supply him with clothes, rather than that he be allowed to wear clothes of his own, cannot justify the trial court's ruling. In a system aspiring toward the ideal of equal justice under law, indigence cannot be allowed to deprive an accused of that presumption of innocence which " 'lies at the foundation of the administration of our criminal law.' " *Id.,* at 503, quoting *Coffin* v. *United States,* 156 U. S. 432, 453 (1895). "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Griffin* v. *Illinois,* 351 U. S. 12, 19 (1956).

The California Court of Appeal correctly assumed that the trial court's ruling was erroneous. It held, however, that the error was "harmless beyond a reasonable doubt." *Chapman* v. *California,* 386 U. S. 18, 24 (1967). In essence, the appellate court reasoned that petitioner was not harmed by his appearance in jail clothing because he was also deprived of the presumption of innocence by other actions taken by the trial court. Specifically, the Court of Appeal recognized that the California procedure of permitting a manslaughter

defendant [3] to be tried on an information alleging murder, allowing the prosecutor to argue to the jury that a murder was committed, and instructing the jury on the elements of first- and second-degree murder, inevitably taints the defendant in the eyes of the jury. The appellate court felt constrained to approve this procedure because of California Supreme Court precedent: [4]

> "By following the California Supreme Court mandate and permitting defendant to be tried on an information alleging murder, by receiving evidence of murder, and by its instructions to the jury, the trial court informed it that this was not the run-of-the-mill defendant. The damage done by defendant's appearance in jail clothing was accomplished by a procedure held valid by our Supreme Court. Any error in denying defendant's motion for civilian clothing thus did not further prejudice him."

This reasoning transforms the harmless-error rule of *Chapman* into the legal equivalent of the doctrine that two wrongs make a right.

This Court has never passed on the prejudicial and unnecessary.[5] procedure that the appellate court thought rendered

---

[3] Petitioner's first trial for murder resulted in a conviction of second-degree murder. That conviction was reversed on appeal. His second trial resulted in a voluntary manslaughter conviction, which was also reversed. His third trial ended with another voluntary manslaughter conviction. The appellate court reduced that conviction to involuntary manslaughter because of an error in jury instructions. The judgment of guilty of involuntary manslaughter is before us on the present petition.

[4] See *People* v. *McFarlane*, 138 Cal. 481, 71 P. 568 (1903), cited in *In re McCartney*, 64 Cal. 2d 830, 415 P. 2d 782 (1966). *McCartney* relied on *McFarlane* for the proposition that a defendant whose manslaughter conviction on a murder information had been reversed could be retried for manslaughter despite the running of the statute of limitations for that crime.

[5] The California Court of Appeal noted:
"The result sought by the awkward approach is obtainable without the

the error here harmless. But in *Price* v. *Georgia,* 398 U. S. 323 (1970), we did reject a harmlessness claim in a case almost identical to petitioner's. In *Price,* the defendant's first trial had ended in an acquittal on a murder charge and a conviction on a manslaughter charge; the conviction was reversed on appeal. The defendant then was retried on the murder charge and again convicted only of manslaughter. The State argued that any error in retrying the defendant for murder was harmless in light of the fact that he was acquitted of the murder charge at the second trial. That argument was rejected, in part because the defendant had improperly been made to suffer the trauma and risk of a second murder trial. But the Court considered "perhaps of more importance" the fact that it could not "determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence. See *United States ex rel. Hetenyi* v. *Wilkins,* 348 F. 2d 844 (CA2 1965), cert. denied, 383 U. S. 913 (1966)." *Id.,* at 331–332. Although there is no possibility here that the jury compromised on the manslaughter conviction since it was instructed that it could return no verdict higher than manslaughter, a similar flaw inheres in the California procedure. It is simply impossible to say that submitting to the jury a heinous crime for which petitioner was not on trial and of which he could not have been convicted might not have "induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence."

I would grant the writ of certiorari.

---

confusion and prejudice flowing from it. Where there is a reversed conviction of an offense included in a greater charge, the information can be amended accordingly and the jury instructed that for the purposes of the particular case the lesser offense is defined to include the ultimate facts which constitute the definition of the greater crime originally alleged."