[Crim. No. 3811.   Second Dist., Div. One.   Oct. 25, 1944.]

THE PEOPLE, Respondent, v. STERLING McDONALD, Appellant.

Gladys Towles Root for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, Fred N. Howser, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

DORAN, J.—In a trial before the court, a jury having been waived, appellant was found guilty of first degree robbery; and, appellant having admitted two prior felony convictions, the court adjudged appellant an habitual criminal. The prosecution of appellant was upon an amended information charging the offense of robbery, with two prior convictions of felony. The appeal herein is taken both from the judgment and from the order denying a motion for a new trial. It appears from the record that the testimony of the complaining witness was essential to the case for the People; and that no conviction could have properly been obtained without such testimony. The complainant was not present at the trial and his testimony given at the preliminary examination was read into evidence over the objection of appellant. Appellant cites the admission of such testimony as error, upon the ground that there was not sufficient foundation for the reading into evidence of the testimony given by the complaining witness at the preliminary examination.

In this connection, the record reveals the following testimony, given at the trial by the process server who sought to serve a subpoena upon the complainant. It was upon the evidence given by the process server that the transcript of complainant's testimony given at the preliminary examination was admitted into evidence at the trial.

"Q. Did you ever receive a subpoena to notify one, or to serve one Leonard York? A. I did. Q. And when did you receive that subpoena? A. I received that subpoena. in the latter part of October. Q. Of last year? A. Of last year, yes, sir. Q. Did you go any place to locate Leonard York? A. Yes, I did. Q. By the way, was there any address on the subpoena showing the residence? A. The only address that I had on the subpoena was that he worked in a Chinese cafe,. and to contact Officer Young. Q. Did it state where the Chinese cafe was? A. No, sir. Q. Did you contact Officer Young? A. I did. Q. That is Officer Young of the Los Angeles Police Department? A. That is right. Q. After you contacted Officer Young, what next did you do? A. Officer Young informed me that he had left the Chinese cafe, and had appeared and was now working at 116 West Fifth Street. Q. Did you go to that place? A. I did. Q. Did you find a person there by the name of Leonard York? A. At that time he was working there. That was about November 3rd. Q. Did you see him? A. No, sir. Q. Did you speak to anyone about him? A. I spoke to the manager of the cafe there and he said that he come to work at about three in the afternoon and works until eleven. Q. Did he return at any time during those hours? A. I returned the next day and they said he had moved—they had transferred him to 715 South Hill Street. Q. Did you go to that address? A. Not on that day, no sir. Q. When did you go there? A. I went there about—— this notation I am reading from I made at the time of the search. I went there on about the 5th of November. To South Hill Street. Q. What did you learn after you went to that address? A. I learned that he was not working there, he had not come to work that day. Q. Did you receive any information as to his whereabouts? A. Not at that time, I did not. Q. What next did you do? A. On the 6th I went back there and they said that he must have left, because he hasn't returned. I asked them if he was discharged, and they said no. Q. Did you know whether or not there was any money waiting for him at that address, or wages? . . .

Q. What were you informed relative to wages being left or being owing by the woman of this establishment where you called? A. The lady who was manager of the cafe at 715 South Hill Street informed me that his wages were still there. Q. What did you do next? A. I am not sure, but I think at 715 South Hill Street this lady who was the manager of that cafe informed me that he shouldn't be working, that he had some injury to his side; that he was just recently discharged from the Army. Q. On receiving that information what did you do? A. On receiving that information on November 15th I checked the U. S. Veterans Hospital. Q. At Sawtelle? A. At Sawtelle. Q. What did you learn? A. I learned that he was not there. Q. Did you check any other hospital? A. No. On November 29th I rechecked at 116 West Fifth Street, 715 South Hill Street, on November 29th, to see if he had returned for his money, or his address. Q. Those are the two restaurants you found he was working? A. Yes, sir. Q. Did you receive information as to whether or not he had returned to those addresses? A. I did. He had not returned. Q. What next did you do? A. Then on December 12th I checked 715 South Hill Street, and the General Hospital. Q. What did you learn on that date? A. I found out at that time he had not returned for his check, or they had not seen him. Q. Did you make any further search? A. Yes. Q. What next did you do? A. On 12/7 and 12/8 I checked the Lincoln Heights jail, and also the Central Police Station. He had not been in either one of those two places. Q. Did you make any other search? A. Yes, on January 14th, 1944, I checked 715 South Hill Street, and he had not been there, and up until that date his check was still waiting for him. Q. Did you make any inquiries as to the residence of this person? A. Yes, I did. I was given one address, and I believe it came from 116 West Fifth Street, that he lived at 380 East Santa Barbara Street. Q. Did you go to that place? A. I went to that place, at about 380. There is no such address as 380 Santa Barbara. Q. Did you make any other inquiries that gave you any address relative to his possible address? A. No, sir." Upon cross-examination of the process server the following was asked and answered: "Q. Did you check a place, E. Grace's restaurant that is mentioned in the preliminary examination at page 4, which says, 'Did you stay with a person by the name of E. Grace? Is that the Eddie that you speak of? A. ——

Yes.' Did you check that Mr. Grace? A. No, I did not. Q. Mr. Grace being the owner of Eddie's Cafe, near the alleged offense? A. No.''

██ The record reveals that appellant was arraigned on October 7, 1943, and the time to plead was continued to October 11th. On October 11th appellant entered a plea of ''Not Guilty''; and the cause was set for trial on December 2d. The process server did not receive the subpoena until the latter part of October. Such leisurely activity is not ''due diligence,'' in the light of the record of the witness' testimony at the preliminary hearing.

Between that time and November 3d the process server appears to have done nothing except confer with a Los Angeles police officer as to the whereabouts of complainant. On going to 116 West Fifth Street on November 3d, the process server learned there that the complainant came to work about three in the afternoon and worked until eleven. But the process server appears to have waited until the next day before again going to 116 West Fifth Street; and, moreover, it does not appear from his testimony that at that time he went to that address during the hours complainant was supposed to be working there. Upon this visit, on November 4th, the process server learned that complainant had been transferred to work at 715 South Hill Street, an address some seven or eight blocks from 116 West Fifth Street. Yet the server did not go to 715 South Hill Street until the following day. On November 15th, learning that complainant had an injured side and was a discharged veteran, the process server checked the U. S. Veterans Hospital, but did not check at any other hospital. It was not until December 7th that the process server checked the Lincoln Heights Jail and the Central Police Station. The process server apparently never checked what appeared to have been the haunts of complainant at the time of the alleged robbery. The testimony given by complainant at the preliminary hearing revealed him to be an apparently illiterate man, and probably a transient. In any event, the record of the preliminary hearing was in the nature of a warning, for the testimony of the complainant itself was notice of the uncertainty of such witness' whereabouts at any time. On January 14, 1944, some three months after first receiving the subpoena to serve, the process server again checked at 715 South Hill Street, but appears to have made no search at all between

December 12, 1943, when he checked at 715 South Hill Street and also at the General Hospital, and January 14, 1944. The record merely reveals an incomplete and desultory search for complainant. ■ The provisions of section 686 of the Penal Code, whereby the testimony taken at the preliminary examination may be read into evidence at the trial, upon its being satisfactorily shown that the witness cannot with due diligence be found within the state, contemplate something more than a desultory and indifferent search for a witness. ■ The admission of complainant's testimony taken at the preliminary hearing, upon a foundation which shows only lack of diligence, constitutes an abuse of discretion on the part of the trial court, which under the circumstances must be held prejudicial. It is unnecessary to consider the other points raised.

For the foregoing reasons, the judgment and the order denying the motion for a new trial are, and each of them is reversed.

York, P. J., and White, J., concurred.