[Crim. No. 4493. Second Dist., Div. Three. Nov. 29, 1950.]

THE PEOPLE, Respondent, v. LEO KURANOFF, Appellant.

Eugene V. McPherson for Appellant.

Fred N. Howser, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

VALLÉE, J.—Defendant was convicted of second degree robbery by the court sitting without a jury. The charge was that he had forcibly taken $869 from the person of Florence L. Nicholas. Mrs. Nicholas was not present at the trial. The court, over the objection of defendant, permitted the People to read in evidence her testimony taken at the preliminary examination of the defendant. Defendant urges that it was not shown that Mrs. Nicholas could not, with due diligence, be found within the state.

Penal Code, section 686, provides that in a criminal prosecution the defendant is entitled "to be confronted with the witnesses against him, in the presence of the court," except that the testimony of a witness given at the preliminary examination of the defendant may be read in evidence upon its being satisfactorily shown to the court that he "cannot with due diligence be found within the state."

On January 25, 1950, the trial of the action was set for March 6, 1950. The showing of diligence was as follows: John F. Egger, a deputy sheriff of the county of Los Angeles attached to the district attorney's office and there assigned to the work of process serving, testified that he attempted to locate Florence L. Nicholas. On March 1, 1950, he went to the Post Office Cafeteria where Mrs. Nicholas was employed and spoke to the manager. The manager informed him that she had "quit." He asked the manager if he knew her whereabouts or her home address. The manager gave him an

address at 1430½ Micheltorena Street, Los Angeles. That afternoon he went to that address, in a bungalow court, knocked on the door, and did not get an answer. He went back the next morning at 8 a. m. There was still no answer. He went to the manager of the court and asked for Florence L. Nicholas. The manager informed him that Mrs. Nicholas had gone to Arizona two or three weeks previously. He asked her if she knew where in Arizona. She said "no that, but that she was expecting to hear from the first wife of the man who Mrs. Nicholas was living with as soon as he sent her her alimony check." He testified that he "had no information other than that until this noon [March 6, 1950]," when "The manager called me and told me that she had received word from the first wife as to the whereabouts of Mr. Aines and Mrs. Nicholas"; that she told him Mrs. Nicholas was in Parker, Arizona. He further testified that he went to the registrar of voters, found no record of Mrs. Nicholas, and that was all the search he made and all the information he had on the subject. On cross-examination Mr. Egger testified that he did not see any communications from Mrs. Nicholas from Parker, Arizona, to the other people he mentioned, and "Q. You didn't go out to see if she had a letter or anything of that kind? A. No, sir, they didn't have any letters. Q. They said they received word, what word had they received, if you know? A. Well, the landlady called me this noon at the office and told me, prior to this noon she had received no word. Q. And the word she received so far as you know, you don't know whether it was a letter, wire, or what? A. No, I don't, sir"; that Mrs. Nicholas had not been subpoenaed for the trial on March 6, 1950; that he made his search for the purpose of subpoenaing her. The following then occurred: "THE COURT: Didn't you ask her how she knew that? THE WITNESS: You mean the landlady? THE COURT: The landlady, yes. THE WITNESS: Well, she had a mail from Mrs. Nicholas. THE COURT: She had some mail, did she say she had some? THE WITNESS: Yes, she showed it to me. THE COURT: She showed you the letter? THE WITNESS: She showed me a stack of mail. She said, 'They are mostly ads, I should forward them to her.' THE COURT: I mean, she telephoned you this noon, didn't she? THE WITNESS: Yes, sir. THE COURT: Said she just heard from her and she was in Parker? THE WITNESS: No. Oh, no, she didn't hear from her, she heard—it is quite complicated —the man who Mrs. Nicholas is living with, she heard from

the man's first wife, when Mr. Aines sent her the alimony check from Parker, Arizona, so it is to be presumed that Mrs. Nicholas is with him in Parker, Arizona, because the landlady said they left together. THE COURT: She called you this noon and told you that? THE WITNESS: Yes, sir. I left my card with her the other morning and said if she did find the address that I would appreciate her getting in touch with me. THE COURT: What was it you said that she told you when you first went there, that she thought that the lady had gone where, was it to Arizona? THE WITNESS: Arizona, that is as much as she knew then. THE COURT: And did she state that this witness had said that she was going to Arizona when she first left? THE WITNESS: I don't recall her stating that. THE COURT: What were the facts again, that the landlady told you the first time you talked to her? THE WITNESS: She told me that two or three weeks previously, Mr. Aines and Mrs. Nicholas, who had been living together there for some time, checked out, left, it was a bungalow court, checked out of their bungalow and they were going to Arizona, she understood." It was stipulated that at the preliminary examination Mrs. Nicholas gave 1430½ Micheltorena Street, Los Angeles, as her address and her place of employment the Post Office Cafeteria, 900 North Alameda Street, Los Angeles.

█ A finding of a trial court that a sufficient showing of due diligence has been made will not be disturbed on appeal unless its discretion was abused; that is, unless it appears that the evidence is insufficient to support the finding. (*People* v. *Mueller,* 168 Cal. 526, 529 [143 P. 750] ; 8 Cal.Jur. 129, § 217.)

█ The right of a defendent in a criminal action to be confronted in person by the witnesses against him, in the presence of the court, is a valuable and substantial one. (*People* v. *Lewandowski,* 143 Cal. 574, 576 [77 P. 467] ; *People* v. *Hayes,* 72 Cal.App. 292, 301-307 [237 P. 390].) █ "As this is a right clearly connected with his personal liberty, any statute purporting to impair the right is to be liberally construed in his favor," and the State must "bring itself clearly within the provisions of that statute." (*People* v. *Ward,* 105 Cal. 652, 656 [39 P. 33].) "The right of a defendant in a criminal action to cross-examine the witnesses against him is of the highest importance." (*People* v. *Rinesmith,* 40 Cal.App.2d 786, 790 [105 P.2d 1021].) █ The phrase "cannot with due diligence be found within the state" means "that *some* effort must be made to locate the witness in the state at large unless there is evidence from which the court may properly conclude

that such a search would be unavailing." (*People* v. *Hayes,* 72 Cal.App. 292, 306 [237 P. 390].) Whether "due diligence" was shown depends upon the circumstances of each case.

 There was no substantial evidence adduced that Mrs. Nicholas could not "with due diligence be found within the state." (*People* v. *McFarlane,* 138 Cal. 481, 488 [71 P. 568, 72 P. 48, 61 L.R.A. 245]; *People* v. *Ballard,* 1 Cal.App. 222 [81 P. 1040]; *People* v. *Hayes,* 72 Cal.App. 292, 301, 307 [237 P. 390]; *People* v. *McDonald,* 66 Cal.App.2d 504 [152 P. 448]; *People* v. *Blanks,* 67 Cal.App.2d 132, 135 [153 P.2d 449].) On January 25, 1950, the case was set for trial for March 6, 1950. The trial began on that date. The process server did not receive the subpoena until March 1, 1950. "Such leisurely activity is not 'due diligence.' " (*People* v. *McDonald,* 66 Cal. App.2d 504, 508 [152 P.2d 448].) It is negligence, not diligence. The post office was not checked to ascertain if Mrs. Nicholas or Aines had left a forwarding address. The testimony of the process server amounts to no more than that on March 2, 1950, (four days before the day of trial) the manager of the bungalow court at 1430½ Micheltorena Street told him that Mrs. Nicholas and a man named Aines had left, she understood, for Arizona. The manager did not tell him that Mrs. Nicholas had said she was going to Arizona. On the day of trial the manager telephoned and told him—not that she had heard from Mrs. Nicholas from Parker, Arizona, but that she had heard from Aines' first wife who had received a check from Aines from Parker, Arizona. No effort was made to interview Aines' first wife. The witness was not shown to be absent from the state.

The record in the present case discloses a more incomplete and desultory search for the complainant than that made in *People* v. *McDonald,* 66 Cal.App.2d 504 [152 P.2d 448], where it was said, p. 509: "The provisions of section 686 of the Penal Code . . . contemplate something more than a desultory and indifferent search for a witness. The admission of complainant's testimony taken at the preliminary hearing, upon a foundation which shows only lack of diligence, constitutes an abuse of discretion on the part of the trial court, which under the circumstances must be held prejudicial." It appears from the record that the testimony of Mrs. Nicholas was essential to the case of the prosecution and that a conviction could not properly have been obtained without her testimony.

 It must be held that the court erred in permitting her

testimony given at the preliminary examination to be read in evidence, and that for this error the judgment must be reversed.

In view of the necessity of a new trial, another point made by appellant should be considered. He appears to argue that in order to constitute robbery, the felonious taking must be accomplished by means of fear. The statute says that robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and *against his will*, accomplished by means of ''force *or* fear.'' (Pen. Code, § 211.) (Italics added.) The felonious taking may be accomplished by means of either force *or* fear.

The judgment is reversed and the cause remanded for a new trial.

Shinn, P. J., and Wood (Parker), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 26, 1950.