[Crim. No. 18754. Second Dist., Div. Two. May 21, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE KEITH CHANDLER, Defendant and Appellant.

**COUNSEL**

Raymond A. Garcia, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Joel S. Moskowitz, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**COMPTON, J.**—Defendant was convicted in a jury trial of conspiracy to commit robbery, robbery in the first degree and burglary in the second degree.

Sentence on all three charges was to state prison, however, execution of the sentences on the conspiracy and burglary charges was stayed in order to avoid the prohibition of section 654 of the Penal Code against multiple sentencing. Defendant appeals from the judgment and from an order denying his motion for a new trial. The latter order is not separately appealable and the appeal therefrom is dismissed.

All three charges stem from the activities of defendant and three confederates, which activities culminated in the armed robbery of a small general store in Ventura County on January 29, 1970.

Defendant's claims of error are three in number. First, defendant urges that the trial court erred in permitting the prosecution to call defendant's juvenile accomplice as a witness knowing that the witness would invoke the privilege against self-incrimination. Secondly, defendant accuses the prosecutor of prejudicial misconduct in his closing argument to the jury. Lastly, defendant contends that the trial court failed to properly instruct the jury concerning evidence of additional uncharged crimes committed by defendant.

FACTS

On or about January 29, 1970, defendant in company with one Del Mulkey, Mike Mulkey, a juvenile and the son of Del, and Donna Whitfield left Santa Ana, California, and headed for Oregon. The four were traveling in a stationwagon driven by the senior Mulkey. There were several guns in the car including two hand guns.

The party stopped for gas in North Hollywood. During this stop de-

fendant and the younger Mulkey entered the office of the service station where Mike Mulkey stole a loaded pistol from a drawer.

Arriving in the Ventura area about 6:30 p.m., the group stopped at a restaurant and while there discussed the proposed robbery of a bank in Bishop, California. They then proceeded in the stationwagon to a small general store about a mile and half from Lake Casitas in Ventura County, circled the store three times, "talked it over" and then defendant and Mike Mulkey, each armed with a hand gun, got out of the car.

The two entered the store and at gunpoint robbed the female proprietor of $265.00 in cash.

Subsequently, the stationwagon was demolished and abandoned near Ojai, and the party proceeded north in a Datsun camper which they had borrowed from friends in Ventura.

On arrival in Grant's Pass, Oregon, Donna Whitfield reported these incidents to the police and she subsequently testified for the prosecution at the defendant's trial. Her testimony was corroborated by the victim of the robbery who positively identified defendant and Mike Mulkey as the bandits.

Del Mulkey was arrested on February 15, 1970, in Santa Ana while driving the Datsun camper. A search of the camper produced five guns including the one which had been stolen in North Hollywood and which had been used in the robbery.

Del Mulkey was identified by the victim of the robbery as a former customer of another store which she had operated several years before.

Defendant offered no evidence to controvert these facts. Thus in seeking to establish error sufficient to warrant a reversal of the judgment, defendant has a difficult task indeed. (Cal. Const., art VI, § 13.)

Defendant's first assignment of error is based upon the following sequence of events.

Mike Mulkey was processed through the juvenile court on the basis of a petition alleging his commission of the robbery. After admitting the allegations in the petition he was made a ward of the court and committed to the California Youth Authority. This occurred prior to defendant's trial.

In the juvenile proceedings Mike was represented by court-appointed counsel. That counsel had advised the district attorney that he would not permit any questioning of Mike by law enforcement agents.

However, after the commitment to the California Youth Authority and after time for appeal had expired and after counsel had filed his claim for compensation, an investigator from the district attorney's office questioned Mike about the robbery. At the time the juvenile was still in the county jail awaiting transportation to a state facility.

During this questioning the investigator specifically told Mike that he would not advise him of his rights as required by *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], in order to insure that any statement he made would *not* be used against him. Mike fully confessed his part in the robbery and implicated the defendant.

Subsequently, during the trial of the defendant, Mike was brought into the courtroom and identified by the victim. When the prosecution indicated its intention to call Mike as a witness, counsel for defendant objected, contending that Mike's constitutional rights had been violated and that the prosecution was guilty of unethical conduct in violating Mike's counsel's request not to question him.

■ The proceedings involving Mike were concluded and court-appointed counsel no longer represented him. Thus, the matter of his questioning was well outside the ambit of *Massiah* v. *United States,* 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199].

■ In any event defendant had no standing to complain of any possible violation of Mike's Fifth and Sixth Amendment rights. (*People* v. *Varnum,* 66 Cal.2d 808 [59 Cal.Rptr. 108, 427 P.2d 772]; *Clifton* v. *Superior Court,* 7 Cal.App.3d 245 [86 Cal.Rptr. 612]; *People* v. *McFadden,* 4 Cal.App.3d 672 [84 Cal.Rptr. 675].)

No litigant has the right to insist that a witness will, by asserting the privilege against self-incrimination, refuse to give relevant testimony. That privilege is purely personal to the witness. (*People* v. *Barker,* 232 Cal. App.2d 178 [42 Cal.Rptr. 651].)

■ Defense counsel also advised the court that he believed that Mike would refuse to testify if called. The trial court quite properly refused to enjoin the prosecution from calling Mike to the witness stand. Neither the court nor the prosecution were obliged to accept counsel's prediction of Mike's behavior.

■ A witness who is not the defendant has no right to refuse to be sworn. (Evid. Code, §§ 911, 940.)[1]

---

[1]See Law Revision Commission Comment to section 940 of the Evidence Code at page 407 distinguishing the privilege against self-incrimination as applied to a witness from that as applied to the defendant in a criminal case.

■ In view of the fact that Mike had confessed his crime in both the juvenile proceedings and to the investigator, the prosecution was justified in expecting that he would repeat his story on the witness stand.

After Mike was sworn as a witness, he was asked if he recognized the victim of the crime when she identified him in court. He refused to answer. The judge then excused the jury and conducted a hearing to determine whether the privilege was properly claimed. Whether or not Mike could, at that juncture, assert the privilege against self-incrimination is debatable. However, the question is moot. He was granted immunity under section 1324 of the Penal Code and when he still refused to testify he was held in contempt of court.

Mike was a competent witness for the prosecution and it was not error, therefore, to call him to the stand whatever may have been the resulting consequences to the defendant. (*People* v. *Plyler,* 121 Cal. 160 [53 P. 553]; *People* v. *Leavitt,* 127 Cal.App. 394 [15 P.2d 894]; *People* v. *Wheeler,* 243 Cal.App.2d 340 [52 Cal.Rptr. 508].)

We find no error in the procedure which was followed.

■ Defendant's position is that the prosecution should not be permitted to force a witness to assert the privilege against self-incrimination in the presence of the jury. Inherent in this argument is that some form of pre-testimonial hearing must be conducted for the purpose of determining the witness' intention.

No such requirement is to be found in the Evidence Code. To the contrary Evidence Code section 913 clearly envisions that the privilege will be claimed in the presence of the jury.[2]

■ Furthermore, "[the privilege against self-incrimination] cannot be urged by the witness until a question is put to him after being sworn, . . . Whether the answer . . . might [tend to incriminate the witness] the court. . . . must adjudge [citation], and *it cannot be called on to do so in advance of the question being put.*" (*Ex parte Stice,* 70 Cal. 51, 53 [11 P. 459].) (Italics added.)

---

[2]Evidence Code section 913: "(a) If in the instant proceeding or on a prior occasion a privilege is or was exercised not to testify with respect to any matter, or to refuse to disclose or to prevent another from disclosing any matter, neither the presiding officer nor counsel may comment thereon, no presumption shall arise because of the exercise of the privilege, and the trier of fact may not draw any inference therefrom as to the credibility of the witness or as to any matter at issue in the proceeding. (b) The court, at the request of a party who may be adversely affected because an unfavorable inference may be drawn by the jury because a privilege has been exercised, shall instruct the jury that no presumption arises because of the exercise of the privilege and that the jury may not draw any inferences therefrom as to the credibility of the witness or as to any matter at issue in the proceeding."

A witness has no right to simply refuse to testify generally either before or after being sworn, the privilege must be asserted as to each question.

Our experience in observing the vagaries of witnesses, especially accomplices in crimes, leads us to the conclusion that it would be unrealistic and unwise to require any examination into a prospective claim of privilege until such time as the witness is in such a posture that, if he chose not to claim the privilege, his testimony would constitute competent evidence.

Witnesses often change their minds in relatively short periods of time. It is always possible that a witness would, in a pre-testimonial hearing, indicate that he would testify and yet refuse to do so when actually questioned in the presence of the jury. Conversely, a witness might express an intention to claim the privilege and yet when actually questioned on the stand freely answer the questions.

In the case at bar any possible error in permitting Mike to initially claim the privilege in the presence of the jury was inconsequential in view of the fact that after being granted immunity he still refused, under threat of contempt, to answer the prosecutor's questions.

Following a valid grant of immunity, the prosecutor was well within his rights in putting the witness on the stand and attempting to elicit relevant testimony.

Either party to litigation has the absolute right to expect that a witness, *without any prior consultation,* will, in the absence of a valid assertion of privilege, answer relevant questions when called to the witness stand.

The jury was properly instructed that it should draw no inference from the witness' refusal to testify.

Defendant's next contention is that the prosecutor violated the mandate of *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], by commenting on defendant's failure to testify.

The portion of the prosecutor's argument which defendant calls into question consisted of rhetorical questions and comments suggesting that if the defendant had not been at the scene of the robbery, and was thus innocent, he could have produced alibi evidence by persons whose testimony could establish his presence elsewhere at the critical time.

*Griffin* v. *California, supra,* dealt with the California constitutional provision which permitted an adverse inference to be drawn from defendant's resort to his constitutional right not to testify. In holding such procedure to be improper, *Griffin* did not foreclose the prosecutor from

emphasizing the absence of other evidence to controvert the proof in the People's case. Nor does *Griffin* bar a suggestion by the prosecutor that the failure to produce certain witnesses or evidence, other than his own testimony, which a defendant might be expected to produce, warrants an inference that the witnesses or evidence were either nonexistent or unfavorable to the defendant. (See Evid. Code, §§ 412, 413; *People* v. *Hall,* 7 Cal.App.3d 562 [86 Cal.Rptr. 504]; *People* v. *Burns,* 270 Cal.App.2d 238 [75 Cal.Rptr. 688]; *People* v. *Romero,* 244 Cal.App.2d 495 [53 Cal. Rptr. 260].)

Failure to call a material and important witness can be considered by the jury and commented upon by the prosecuting attorney. (*People* v. *Coleman,* 71 Cal.2d 1159 [80 Cal.Rptr. 920, 459 P.2d 248].)

 No valid distinction can be drawn between comment on a failure to call a material witness and the suggestion that witnesses favorable to the defense were not called simply because they do not exist.

Defendant's final claim of error to the effect that the trial court should have, *sua sponte,* instructed the jury on the effect of evidence of other uncharged offenses, to wit, the theft of the gun from the gas station, is completely answered by the record. The trial court did just that in the language of CALJIC 2.50.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.