[Crim. No. 18763. Second Dist., Div. Four. July 21, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
QUENTINE GONZALES RODRIGUEZ, Defendant and Appellant.

## COUNSEL

Ralph C. Larsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Larry C. King, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

DUNN, J.—A jury found defendant guilty of selling heroin in violation of Health & Safety Code section 11501. He appeals from the judgment of conviction and from an order denying his request for probation.[1]

Prosecution evidence mainly consisted of reading testimony which had been given by Michael Homotoff at a preliminary hearing, the testimony of

---

[1]Such discretionary order is not appealable. Apparently recognizing this, appellant makes no argument concerning it in his brief. We therefore consider the point as abandoned and dismiss the purported appeal from the order.

Peter J. Finnigan who was the arresting officer, and the testimony of James Elsaas, the prosecution's investigator, who detailed his unsuccessful efforts to locate and produce Homotoff as a witness at the trial.

Appellant raises three points on his appeal.

I. *Appellant's Contention That The Prosecution Failed To Produce Substantial Evidence Of Due Diligence To Justify Reading The Absent Witness's Testimony.*

There is no doubt that an accused has a constitutional right to confront witnesses against him. When the witness is unavailable, however, testimony of the witness given on an earlier occasion may be read into evidence under appropriate circumstances. The requirement and its exception here applicable are set forth in Penal Code section 686, subdivision 3, Evidence Code sections 1291, subdivision (a) (2) and 240 subdivision (a) (5) and *Barber* v. *Page* (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318]. ("In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber, supra,* at pp. 724-725 [20 L.Ed.2d at p. 260].)

We summarize the record showing a "good faith effort," or due diligence, to produce witness Homotoff at the trial. On March 27, 1969 the trial was set for May 8th and on that date it was continued to May 19th, on motion made by the prosecution for more time in which to locate a key witness (Homotoff). On May 19th, trial was again continued to May 26th for the same reason. The trial began on May 26th, even though the witness still had not been located.

At the trial, James Elsaas testified he was an investigator for the district attorney and on May 20th was requested to serve a subpena on Homotoff. He then related that the subpena had been earlier issued and given to Deputy Sheriff Andrews who told him he had attempted to serve Homotoff without success. (Such hearsay was admissible. *People* v. *Thomas* (1958) 164 Cal.App.2d 571, 575-577 [331 P.2d 82].) During the period of May 20-23, Elsaas visited 12 different locations, 4 of them more than once, trying to locate Homotoff. At his home address, Homotoff's father said his son was trying to avoid service of the subpena because he had been beaten up after testifying at the preliminary hearing. Elsaas called at Homotoff's last discoverable place of employment, at the homes of various neighbors, at business establishments in the area and at the residence of Homotoff's "girl friend." He also telephoned numerous places, including hospitals, police departments, jails, the coroner's office, a draft board, narcotics bureaus and the Veterans Administration, unsuccessfully trying to locate Homotoff. At 8:20 a.m. on the morning of trial, May 26th, Elsaas re-

ceived a telephone call from a man identifying himself as Homotoff, who said he would not appear as he feared reprisal if he did; he feared that if he testified and defendant went to prison, defendant would seek him out when released to get revenge.

██ Appellant contends that, as a matter of law, the evidence hereinbefore summarized does not show the exercise of due diligence to secure Homotoff's presence at the trial, chiefly arguing alleged delay in beginning the efforts to subpena him. He relies principally upon *People* v. *Kuranoff* (1950) 100 Cal.App.2d 673 [224 P.2d 402]; *People* v. *McDonald* (1944) 66 Cal.App.2d 504 [152 P.2d 448] and *People* v. *Hayes* (1925) 72 Cal. App. 292 [237 P. 390], none of which is factually similar to our case.

At the outset, we note that defense counsel had thoroughly and extensively cross-examined Homotoff during the preliminary hearing[2] at which Homotoff had testified.

██ "Whether due diligence has been shown is a factual question to be determined according to the circumstances of each case. . . . Unless there has been an abuse of discretion, the ruling of the trial judge will not be disturbed [citing cases]." *People* v. *Peters* (1969) 276 Cal.App.2d 71, 78 [80 Cal.Rptr. 648]. ██ The evidence was adequate to support the trial judge's ruling, permitting the reading of Homotoff's testimony at the preliminary hearing (cf: *People* v. *Benjamin* (1970) 3 Cal.App.3d 687, 696-698 [83 Cal.Rptr. 764]; *People* v. *Banks* (1966) 242 Cal.App.2d 373, 376-379 [51 Cal.Rptr. 398]) and we find no abuse of discretion. The evidence showed, among other things, that Homotoff was actively avoiding being served with the subpena by hiding from the process server. The trial court reasonably could conclude that earlier efforts to serve him had, and would have, been unsuccessful for the same reason. Inasmuch as Homotoff had feared defendant since a time soon after the preliminary hearing, he had a long-standing motivation to avoid another court appearance.

II. *Appellant's Contention That The Trial Court Abused Its Discretion In Finding "Due Diligence" Had Been Demonstrated In Locating The Witness.*

Although appellant makes this a separate point in his brief, it already has been disposed of in discussing his first contention. No further consideration is required.

---

[2]Evidence Code section 1291, subdivision (a)(2): "(a) Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: (1) . . . (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

III. *Appellant's Contention That The Trial Court Erred In Receiving Evidence To Establish Due Diligence With The Jury Present.*

 "Ordinarily, the better practice requires that all doubtful questions of evidence or procedure should not be proposed or discussed in the presence of the jury." *People* v. *Terry* (1960) 180 Cal.App.2d 48, 53 [4 Cal. Rptr. 597] (cert. den. *Terry* v. *California* (1961) 364 U.S. 941 [5 L.Ed.2d 372, 81 S.Ct. 458]). The rule stated is not a hard and fast one, however, as demonstrated by the very case from which it is quoted. Thus, the absence of a material witness well may affect the weight which a jury will accord his testimony, given on an earlier occasion, when it is read into the evidence and it is arguable that the prosecution should not be denied the right to explain the witness's unavailability. On the other hand, where the explanatory evidence is of a nature prejudicial to the defendant, the trial court must exercise discretion in determining which side is likely to suffer more from the evidence or from its exclusion. This discretion is now embodied in Evidence Code section 352.

 In 1967 our Evidence Code became effective. After defining "preliminary fact" (Evid. Code, § 400), the code states (§ 402): "(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article. (b) The court *may* hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; *but* in a criminal action, the court *shall* hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests." (Italics added.) It will be noted the second phrase in subdivision (b) requires a hearing out of the jury's presence only (1) in a criminal action, (2) regarding admissibility of a confession or admission (3) of the defendant, and only (4) if any party so requests; otherwise the court may hear and determine the question in the jury's presence. The court in our case heard the foundational evidence, relating to the admissibility of Homotoff's earlier testimony, in the presence of the jury, and the burden is on defendant to show that appealable and prejudicial error resulted.

Appellant voiced no objection when the court permitted Elsaas to testify in the jury's presence, nor did he inform the court of the possibly prejudicial effect of the testimony to be educed. He is not now, therefore, in position to complain. A party should not be entitled to sit back and listen to evidence without objection and then, when the outcome of the case is not as hoped for, make complaint that the evidence was received in error. There is no ruling of the trial court before us, since no ruling was requested. Accord-

ingly, there was no erroneous ruling made by the trial court of which defendant may now complain.

Furthermore, after Elsaas gave evidence and before Homotoff's testimony was read to the jury, the court informed the jury: "Nothing that has been produced in this court yet, ladies and gentlemen, is evidence bearing upon the guilt or innocence of the defendant." Such admonition served to put the evidence in its proper light and tended to remove its sting, if such there was, on the defendant.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.