[Crim. No. 11567. First Dist., Div. Two. June 11, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
FLOYD S. JOHNSON, Defendant and Appellant.

**COUNSEL**

Larry Sleizer, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

KANE, J.—Defendant Floyd S. Johnson appeals from a judgment of conviction entered after the jury found him guilty of second degree murder.

On September 17, 1972, between 6 and 7 p.m., Charles Stark ("Stark") was stabbed to death by appellant in a parking lot adjacent to the Riviera Apartments on McCreery Avenue, San Jose. The altercation which resulted in the stabbing started due to Stark's failure to pick appellant up in the car. Although Stark did not threaten him, appellant slapped Stark several times. Without offering resistance, Stark first backed away, but when appellant continued slapping him, Stark fought back. This was the moment when the fatal struggle began. Appellant attacked Stark with a knife. Stark retreated,

and in defense against the knife, took off his coat and wrapped it around his arm. Notwithstanding this defensive measure, Stark was stabbed by appellant three or four times. Although Stark was mortally wounded and dying, appellant continued kicking him until others pulled him away. When Stark was placed into a car to be taken to the hospital, appellant got into the car and beat the unconscious man with a tire iron. The coroner's testimony revealed that Stark's death was caused by a knife wound which penetrated about two and one-half inches into his breastbone, piercing his heart.

The testimony was conflicting as to almost all aspects of the case. Thus, for example, while there was detailed evidence that appellant acted normally and did not, by his actions, evidence intoxication, there was also testimony indicating that appellant was "loaded" or "wasted" due to the ingestion of secobarbital and alcohol. However, Officer Demkowski, who arrested appellant about six hours after the killing, testified that at the time of arrest appellant appeared coherent, showed no sign of intoxication, and admitted being in the fight contending it occurred because of a $6-7 debt owed by Stark to appellant. The laboratory report indicated that at 1:30 a.m. the next morning appellant's urine showed the presence of morphine, his blood contained four parts per million secobarbital, but no alcohol at all. It was possible, however, that the secobarbital had been taken after the fight.

Expert psychiatric testimony was also conflicting. Dr. Rapaport, testifying for the prosecution, examined appellant the day after the fight and found no memory damage, no mental disease or defect, and nothing to have precluded appellant from forming either malice aforethought or specific intent to kill Stark. He expressed the view that a person who had taken gross amounts of depressants (secobarbital is a depressant) would not remember the fight; indeed such a person would have lacked the requisite control of his muscles to enable him to fight at all. In his opinion, appellant did not consume enough drug and/or alcohol to have obliterated his consciousness and memory. Dr. Rapaport's testimony was corroborated by Brian Smith Finkle, a forensic toxicologist, who stated that if both secobarbital and alcohol are taken in large amounts, the user would not be capable of winning a fight or talking about it afterward, as appellant did here. On the other hand, Dr. Tempey, testifying for the defense, opined that there was a probability that appellant was so intoxicated as to render him incapable of forming intent to kill or malice aforethought. He expressed the opinion that appellant's mental capacity to form intent to kill or to entertain malice aforethought was diminished.

Although the testimony of eyewitnesses was contradictory as to the origin of the knife used to kill Stark and its actual use in the fight, there was overwhelming evidence that appellant possessed the knife before the struggle started.

There was additional evidence introduced to show that the genesis of the fight between appellant and Stark occurred in February 1972, at which time they quarrelled and fought over their respective girl friends. Similarly, evidence was presented proving appellant's state of mind after the fight. Accordingly, appellant bragged that he did not care if Stark died, and emphasized that he would not have pulled the knife unless he meant to use it.

Taking the witness stand on his own behalf, appellant testified that he had not carried a knife; did not have a knife in his hand when the fight started; and did not know how he got the knife. He maintained that his brain "exploded," that he did not remember what happened during the fight, and, in particular, he did not remember stabbing Stark.

### Right to Confrontation

Appellant first contends on appeal that his statutory and constitutional right to confront witnesses was violated because the prosecution failed to exert due diligence to secure the trial attendance of witness Sullivan and, instead, his testimony given at the preliminary hearing was read into evidence. Appellant's position is not well taken.

Undeniably, in our legal system, a criminal defendant has a right to confront witnesses against him (U.S. Const., 6th Amend.; Pen. Code, § 686). However, the defendant's right to confrontation is not absolute. In *Barber* v. *Page* (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318], the United States Supreme Court recognized that "there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant," but held that a witness is not " 'unavailable' " under this exception "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." (P. 725 [20 L.Ed.2d p. 260]; see also *People* v. *Ringegold* (1970) 13 Cal.App.3d 711, 718 [92 Cal.Rptr. 12].)

The California statutory provisions are in harmony with the foregoing principles. Penal Code section 686 provides in pertinent part that in a criminal action the defendant is entitled to produce witnesses on his behalf and to be confronted with the witnesses against him in the presence of the

court, except that hearsay evidence may be admitted to the extent that is otherwise admissible in criminal actions under the law of this state. Providing for the exception to the hearsay rule, Evidence Code[1] section 1291, subdivision (a), sets forth so far as pertinent that "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is *unavailable as a witness* and: . . .

"(2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and *opportunity to cross-examine the declarant with an interest and motive similar* to that which he has at the hearing." (Italics added.)

Under statutory definition, " 'unavailable as a witness' " means that the declarant is "Absent from the hearing and the proponent of his statement has exercised reasonable diligence but has been unable to procure his attendance by the court's process" (§ 240, subd. (a)(5)). At the same time the cases underscore that the interest and motive for the cross-examination of the prosecution witness at the preliminary hearing and at the trial are similar, notwithstanding that the cross-examination at the preliminary hearing may, by the very nature of that proceeding, be less reaching than at the trial (*People* v. *Benjamin* (1970) 3 Cal.App.3d 687, 695 [83 Cal.Rptr. 764]; *People* v. *King* (1969) 269 Cal.App.2d 40, 47 [74 Cal.Rptr. 679]).

The pertinent factors to be considered as to whether the requirements of *Barber* v. *Page, supra,* and the California statutes have been met were summarized in *People* v. *Benjamin, supra,* at page 696, as follows: ". . . it is not enough to show that the witness is unavailable, that his testimony is necessary at the trial, and that the witness was cross-examined at the preliminary hearing as provided in Evidence Code section 1291. The burden is on the prosecution to show that it made a good faith effort, with reasonable diligence, to procure the attendance of Guthrie at the trial. (*People* v. *Ward,* 105 Cal. 652, 656 [39 P. 33]; *People* v. *Horn,* 225 Cal.App.2d 1, 4 [36 Cal.Rptr. 898]; see *People* v. *Nieto,* 268 Cal.App.2d 231, 239 [73 Cal.Rptr. 844].) In establishing 'due diligence' it is not enough to show that the witness has not been found, but there must be evidence of a substantial character to support the conclusion of due diligence. (*People* v. *Redston,* 139 Cal.App.2d 485, 494 [293 P.2d 880]; *People* v. *Banks,* 242 Cal.App. 2d 373, 376 [51 Cal.Rptr. 398].) It contemplates something more than a desultory and indifferent search, but connotes persevering application and untiring efforts in good earnest. (*People* v. *McDonald,* 66 Cal.App.2d 504, 509 [152 P.2d 448]; *People* v. *Redston, supra; People* v. *Horn, supra,* at

---

[1]Except as otherwise indicated, all references will be made to the Evidence Code.

p. 5.) *The term 'due diligence' is, however, 'incapable of a definition so mechanical and precise as to constitute a rule of thumb' (People* v. *Horn, supra,* at p. 5), *and is largely within the discretion of the trial court, and depends upon the facts and circumstances of each particular case. (People* v. *Cavazos,* 25 Cal.2d 198, 200-201 [153 P.2d 177]; *People* v. *Banks, supra; People* v. *Horn, supra.*)" (Italics added. Accord: *People* v. *Rinegold, supra,* at p. 719.)

■ The foregoing summation makes it clear that the preliminary hearing testimony of a witness is admissible in evidence at the trial only if (1) the witness was cross-examined at the preliminary hearing; (2) his testimony was necessary at the trial; and (3) the prosecution made a good faith effort with reasonable diligence to secure his trial attendance.

■ In the case at bench the first two criteria are not in issue. The record reveals (and appellant fails to contend otherwise) that Sullivan was cross-examined at great length by defense counsel at the preliminary hearing. It is likewise undebated that Sullivan's testimony was of crucial importance at the trial. Thus, the only question confronting us is whether or not the steps taken by the prosecution to secure Sullivan's presence at the trial satisfied the requirements of good faith and reasonable diligence. In view of the governing principles of law and the circumstances of the instant case, we are persuaded that the prosecutorial efforts did meet the requisite standards and, accordingly, the trial court's finding of due diligence must be upheld.

The facts as appear in the record disclose that George Hesse ("Hesse"), an investigator for the district attorney's office, made repeated attempts for an extended period of time to locate Sullivan and to serve a subpoena upon him. His first attempt took place some five weeks before the trial. At that time Hesse went to the home address of Sullivan's parents which had been given by Sullivan at the preliminary hearing, and which, as a later check proved, was also shown on the probation department's record as Sullivan's address. Hesse made extensive inquiries of Sullivan's parents and sister but was informed that they did not know either his whereabouts or where he eventually could be located because he was moving around with unnamed persons. Picking up this meager lead, Hesse pursued the matter further. Having learned that Sullivan was in town, Hesse looked up several friends and acquaintances of Sullivan (among others, Ms. Shields, and attempted also to contact Ms. Brown on several occasions), leaving word for Sullivan to contact him. Three or four days after the first attempt, Hesse went to Sullivan's previous address in Milpitas but found it to be a vacant apartment building. A week or week and a half before the trial Hesse re-

turned to Sullivan's parents to renew his inquiries, and in the last week before trial he again attempted to locate Sullivan through friends, without success.

Although Hesse searched all places where, according to information obtained from all available sources, there was a likelihood that Sullivan might be found (cf. *People* v. *Boyd* (1911) 16 Cal.App. 130, 134 [116 P. 323]), appellant insists that the prosecutorial efforts were not adequate because a number of additional steps could have been taken, i.e., attempts could have been made to locate a possible employer, to check for a record with law enforcement agencies, to look up his address in the post office, telephone company, etc. Appellant's argument is not persuasive.

While the steps mentioned by appellant might be factors in a proper case to determine the reasonableness of the prosecutorial acts (cf. *People* v. *Redd* (1969) 273 Cal.App.2d 345 [78 Cal.Rptr. 368]; *People* v. *Andrade* (1950) 101 Cal.App.2d 509 [225 P.2d 289]; *People* v. *Kuranoff* (1950) 100 Cal.App.2d 673 [224 P.2d 402]; etc.), it is more than obvious that due diligence cannot be measured in absolute terms, and, being incapable of exact definition, of necessity must be considered in light of the particular facts of each case. Thus, what would amount to due diligence in one case might fall fatally short in another, or vice versa. This is well illustrated by the present case. The record establishes that Sullivan was not a settled man but was moving around with unnamed persons. Under these circumstances to check for an employment which was nonexistent and to look up his address in the telephone company's office, etc., would have been doomed to sure failure. The claim that reasonable diligence would have required the search of his criminal record is equally unfounded. The record conclusively shows that Hesse had not previously known that Sullivan was on probation for felony, and at any rate the address appearing in the probation record was identical with the address given by Sullivan at the preliminary hearing, which in turn was checked out by Hesse on several occasions.
■ It bears repetition that whether due diligence has been shown is a factual question and unless there has been an abuse of discretion, the ruling of the trial court will not be disturbed on appeal (*People* v. *Cavazos* (1944) 25 Cal.2d 198, 200-201 [153 P.2d 177]; *People* v. *Smith* (1971) 22 Cal. App.3d 25, 32 [99 Cal.Rptr. 171]; *People* v. *Rodriguez* (1971) 18 Cal. App.3d 793, 797 [96 Cal.Rptr. 162]). ■ Appellant has failed to show such abuse.

### *Exclusion of Evidence*

■ Appellant next argues that the trial court committed prejudicial error by limiting the questioning of witness Battle in front of the jury.

Battle was called as a defense witness. Being unrepresented by counsel, he initially showed a willingness to testify as to the events of September 17, 1972. However, since testimony had been introduced earlier that the knife with which Stark was killed was given by Battle to appellant, the trial court appointed counsel to safeguard Battle's interests. Thereafter a hearing was held outside the presence of the jury. Battle was sworn in as a witness and numerous questions were asked of him with regard to the events at issue. Through his appointed counsel Battle invoked the privilege against self-incrimination with respect to questions concerning the receiving or giving of the knife to appellant. With regard to these questions the trial court upheld the privilege and ordered defense counsel to refrain from asking any questions in the presence of the jury which would involve Battle in the possession, giving or receiving of the knife. Relying mainly on *People* v. *Chandler* (1971) 17 Cal.App.3d 798 [95 Cal.Rptr. 146], appellant claims that the ruling of the trial court was prejudicially erroneous. We disagree.

Preliminarily, we emphasize that the facts in *Chandler* are markedly different from the case at bar. In *Chandler,* the witness for the prosecution invoked the privilege against self-incrimination in front of the jury. At that point, the trial judge excused the jury and *in camera* granted the witness immunity from prosecution. When the witness still refused to testify he was held in contempt (p. 804).

The crucial issue on appeal was whether the trial court was bound to hold a pretestimonial hearing to determine whether the witness would have invoked the Fifth Amendment privilege. Laying down the rule that the privilege against self-incrimination cannot be urged by the witness until a question is put to him after being sworn (*Ex parte Stice* (1886) 70 Cal. 51, 53 [11 P. 459]), and the privilege must be asserted to each question, the court *held* that no pretestimonial hearing is *required* in order to precipitate the invocation of the privilege (*People* v. *Chandler, supra,* at pp. 804-805). That holding, however, does not stand for the proposition that such a pretestimonial hearing *may not* be held in order to determine whether or not the witness is entitled to the privilege. Since in the instant case Battle was sworn as a witness and the privilege was raised and upheld by the trial court as to individual questions, it cannot be denied that the privilege was properly invoked in the pretestimonial hearing.

It is conceded that by way of *dictum* the *Chandler* court conveyed the idea that the privilege against self-incrimination should be invoked in the presence of the jury.[2] For the reasons which follow, we are constrained to

---

[2]The view of the court was expressed in the following language: "Evidence Code section 913 clearly envisions that the privilege will be claimed in the presence of the jury . . . ."

"Witnesses often change their minds in relatively short periods of time. It is

disagree with the court and conclude that in the situation here presented the privilege against self-incrimination may be validly raised in front of the court without the concomitant obligation to renew it before the jury.

First of all, contrary to the statement in *Chandler,* section 913[3] neither envisions nor specifies that the privilege be invoked in the presence of the jury. Instead, it provides only in broad terms that the privilege can be exercised "in the instant proceeding or on a prior occasion," but whenever exercised, no comment may be made thereon, no presumption shall arise and no inference can be drawn therefrom as to the credibility of the witness or as to any other matter. It goes without saying that the term "instant proceeding" includes not only the proceeding conducted in front of the jury but also the related hearing held by the court during the very same trial in the absence of the jury. But the pretestimonial hearing conducted outside the presence of the jury also qualifies as a proceeding held "on a prior occasion" within the meaning of the statute.

Secondly, under well established law the witness is not the final judge of his right to exercise the privilege. Rather, the court must determine whether the answer might incriminate the witness (*Overend* v. *Superior Court* (1900) 131 Cal. 280 [63 P. 372]; *Ex parte Stice, supra; Cohen* v. *Superior Court* (1959) 173 Cal.App.2d 61, 68 [343 P. 286]). In consonance with this principle, it has been held that it is the better practice for the court to require the exercise of the privilege out of the presence of the jury (*Mack* v. *United States* (D.C.Mun.App. 1973) [310 A.2d 234, 236]).

Thirdly, despite the validity of the observation that witnesses may change

always possible that a witness would, in a pre-testimonial hearing, indicate that he would testify and yet refuse to do so when actually questioned in the presence of the jury. *Conversely, a witness might express an intention to claim the privilege and yet when actually questioned on the stand freely answer the questions." (People* v. *Chandler, supra;* italics added.)

[3]Section 913 reads as follows: "(a) If *in the instant proceeding or on a prior occasion* a privilege is or was exercised not to testify with respect to any matter, or to refuse to disclose or to prevent another from disclosing any matter, neither the presiding officer nor counsel may comment thereon, no presumption shall arise because of the exercise of the privilege, and the trier of fact may not draw any inference therefrom as to the credibility of the witness or as to any matter at issue in the proceeding.

"(b) The court, at the request of a party who may be adversely affected because an unfavorable inference may be drawn by the jury because a privilege has been exercised, shall instruct the jury that no presumption arises because of the exercise of the privilege and that the jury may not draw any inference therefrom as to the credibility of the witness or as to any matter at issue in the proceeding." (Italics added.)

their minds "in relatively short periods of time," where, as here, the pre-testimonial hearing is conducted during the trial and is immediately followed by the procedure in front of the jury, the probability of the witnesses' change of mind is almost nil. In such instance, to require the renewal of the invocation of the privilege before the jury would merely amount to a meaningless ritual. This is particularly so because under both section 913 and the cases the jury is forbidden from drawing any inference from the decision of a witness to exercise his privilege against self-incrimination (*Billeci v. United States* (1950) 184 F.2d 394 [85 App.D.C. 274, 24 A.L.R.2d 881]).

The foregoing reasoning is cogently articulated in *Bowles* v. *United States* (1970) 439 F.2d 536 [142 App.D.C. 26]. In *Bowles,* the trial judge refused to permit the defendant to call a witness to the stand after he had ascertained out of the presence of the jury that the witness would refuse to answer questions put to him by invoking the Fifth Amendment. In approving the procedure followed below, the reviewing court stated that the rule prohibiting the jury from drawing any inferences from a witness' invocation of the privilege against self-incrimination "is grounded not only in the constitutional notion that guilt may not be inferred . . . but also in the danger that a witness's invoking the Fifth Amendment in the presence of the jury will have a disproportionate impact on their deliberations. The jury may think it high courtroom drama of probative significance when a witness 'takes the Fifth.' In reality the probative value of the event is almost entirely undercut by the absence of any requirement that the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-examination. [Citation.]

"*An obvious corollary to these precepts is the rule that a witness should not be put on the stand for the purpose of having him exercise his privilege before the jury.* [Citation.] *This would only invite the jury to make an improper inference.*" (Pp. 541-542; italics added.)

▆ In the alternative, appellant presses the argument that the evidence concerning the knife was also admissible as a declaration against penal interest. Appellant's contention is based on the fact that appellant, who took the stand on his own behalf, attempted to testify as to a statement made to him by Battle which related to the origin of the knife. This portion of the testimony, however, was excluded by the trial court as hearsay evidence. The gist of appellant's argument is that under the statute and case law as well evidence of a declarant's statement against his own penal interest is admissible if the declarant is unavailable as a witness (§ 1230; *People* v. *Spriggs* (1964) 60 Cal.2d 868, 870-875 [36 Cal.Rptr. 841, 389

P.2d 377]; *People* v. *Smith* (1970) 13 Cal.App.3d 897, 902 [91 Cal.Rptr. 786, 52 A.L.R.3d 875]), and the assertion of the privilege against self-incrimination, in turn, makes the witness unavailable for the purposes of section 1230 (*People* v. *Smith, supra;* § 240.)[4] We disagree.

It is well recognized that the assertion of the privilege against self-incrimination does not automatically make the witness' extrajudicial declarations admissible under section 1230. In determining whether the privilege applies, the proper judicial focus is upon the questions asked, and the privilege must be upheld whenever the disclosure would *tend* to establish guilt of a criminal offense (*Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 326 [85 Cal.Rptr. 129, 466 P.2d 673]; *Cohen* v. *Superior Court, supra,* at pp. 68-70). The fact that it is within the judicial imagination that the answers to the questions asked of the witness could incriminate him does not, however, mean that the witness' extrajudicial statement as to the same subject matter qualifies as an exception to the hearsay rule as found in section 1230. The litmus test of determining the admissibility of the extrajudicial statement under section 1230 is whether the declarant should have realized or did realize *that the statement when made was distinctly against his penal interest* (*People* v. *Traylor* (1972) 23 Cal.App.3d 323, 330-331 [100 Cal.Rptr. 116]). As Wigmore puts it, the basis of this exception to the hearsay rule is the experience that a statement asserting a fact *distinctly* against one's interest is unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently sanctioned, though oath and cross-examination are wanting (5 Wigmore, Evidence (3d ed. 1940) § 1457, pp. 262-263).

Viewed in the light of these principles, it is evident that Battle was properly allowed to invoke the privilege against self-incrimination. Due to prior testimony that it was Battle who gave the knife back to appellant during the fight, the trial court was justified in concluding that an answer or answers to this line of questioning could subject Battle to criminal consequences.

It is equally manifest that the sheer probability of self-incrimination did not provide sufficient grounds for admissibility under section 1230 as well. In this context, it bears special emphasis that defense counsel admitted in his offer of proof that *appellant took the knife from Battle's hand.*[5]

---

[4]Under the definition of section 240, " 'unavailable as a witness,' " among other things, means that the declarant is exempted or precluded on the ground of privilege from testifying concerning the matter to which his statement is relevant (subd. (a)(1)).

[5]The relevant part of the record reads as follows: Defense counsel: "I would like to ask the Court to reopen the case . . . and . . . permit me to put Mr. Johnson

This statement was corroborated by Ms. Shields, who testified that during the fight appellant *snatched* the knife from Battle and the latter offered no resistance. Under these circumstances it is indeed difficult to discern that Battle, a layman, should have realized, or in fact did realize, that his statement was a distinct threat against his penal interest.

### Admissibility of Tape Recording

■ About six hours after the stabbing a conversation between appellant and Officer Demkowski was recorded on tape. At the trial Officer Demkowski gave detailed testimony with regard to the statements made by appellant to him during the conversation as well as appellant's appearance and state of mind at the time of the statements. The substance of the statements was that appellant remembered that he had been in a fight with Stark, which started over a debt, and that he was also able to recall the events after the fight. The officer further testified that appellant showed no signs of intoxication; walked all right; had no trouble communicating; and had low, slow speech. After the officer's testimony, appellant offered the tape recording itself in evidence, contending that the tape was the "best evidence" of (1) whether appellant was properly advised of his *Miranda* rights; (2) Officer Demkowski's inconsistent statements; and (3) of appellant's physical condition and state of mind at the time of the conversation. The trial court denied appellant's request. Appellant claims that the ruling of the trial court was erroneous.

Appellant's contention is untenable. It is well settled that with regard to the admissibility of evidence the trial court possesses wide discretion and its ruling will not be disturbed on appeal in the absence of clear abuse of discretion (*Estate of Ventura* (1963) 217 Cal.App.2d 50, 63 [31 Cal.Rptr. 490]). In the instant case the testimony concerning the giving and waiver of *Miranda* rights was uncontradicted. In short, the *Miranda* warning was at no time in issue.[6] Appellant was similarly unable to demonstrate any inconsistencies in the officer's testimony and the tape, and conceded that the tape represented the true conversation between the officer and appellant. As far as appellant's physical condition and his state of mind are concerned, the speaking tone as appeared from the tape might have had some relevance. However, when the tape was first offered by appellant the machine

on the stand to· : 1) let him testify as to the conversation with Otis Battles in which Otis Battles stated that when Charles [Stark] was there with Larry Sullivan and my client, Mr. Johnson, approached him; that my client did not have a knife as he approached him; that Paul Shields gave the knife to Mr. Battles, Otis Battles, and that Otis, when he had the knife in his hand, *my client,* you know, *took it out of his hand."* (Italics added.)

[6]Appellant concedes this point in his brief.

being used produced a distortion in the sound quality and although there was discussion concerning the acquisition of a better machine, the matter was never pursued by appellant.

Furthermore, appellant's arduous insistence notwithstanding, the tape recording is not the best evidence of the conversation. ■ The law is settled beyond dispute that when one testifies as to what he has seen or heard, his testimony is primary evidence regardless of whether or not the same matter is reduced to writing or incorporated in a sound recording (*People* v. *Sweeney* (1960) 55 Cal.2d 27, 38 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Swayze* (1963) 220 Cal.App.2d 476, 507 [34 Cal.Rptr. 5]; *People* v. *Hawkins* (1963) 218 Cal.App.2d 151, 156 [32 Cal.Rptr. 392]; *People* v. *Kulwin* (1951) 102 Cal.App.2d 104, 109 [226 P.2d 672]).

### *Prosecutorial Misconduct*

Finally, appellant complains that the prosecutor was guilty of prejudicial misconduct, contending that he asserted his personal belief in appellant's guilt, commented on the ultimate punishment, referred to matters outside the record, disparaged and improperly criticized defense counsel, and asked questions of appellant suggesting the existence of facts for which there was no support in the record.

The principles governing prosecutorial misconduct have been stated and restated on countless occasions. ■ ■ One basic principle is that the prosecutor is entitled to vigorously argue his case, is not limited to " 'Chesterfieldian politeness' " (*People* v. *Bandhauer* (1967) 66 Cal.2d 524, 529 [58 Cal.Rptr. 332, 426 P.2d 900]), and may use appropriate epithets warranted by the evidence (*People* v. *Mitchell* (1966) 63 Cal.2d 805, 809-810 [48 Cal.Rptr. 371, 409 P.2d 211]). It has been likewise reemphasized that the right of a prosecutor to discuss the merits of the case both as to the law and facts is very wide (*People* v. *Beivelman* (1968) 70 Cal.2d 60, 76 [73 Cal.Rptr. 521, 447 P.2d 913]), and that the term *"misconduct" implies a dishonest act or attempt to persuade the court or the jury by use of deceptive or reprehensible methods* (*People* v. *Hayes* (1971) 19 Cal. App.3d 459, 470 [96 Cal.Rptr. 879]). ■ Lastly, it is blackletter law that an alleged misconduct of the prosecutor provides grounds for reversal only if the misconduct is deemed to be prejudicial; that is, if after the review of the entire cause it is reasonably probable that a result more favorable to the defendant would have occurred (*People* v. *Beivelman*, *supra*, at p. 75; *People* v. *Watson* (1956) 46 Cal.2d 818, 835 [299 P.2d 243]).

Bearing in mind these principles, we have thoroughly examined each of

the alleged incidents of prosecutorial misconduct and, after reviewing the entire record, are unable to find any error of prejudicial dimension.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 14, 1974.